Gordon ROCKETT, Lexie Rockett, as Administratrix of the Estate of W. E. Rockett, Deceased, Lexie Rockett, Harrill Rockett, M. Roberta Rockett, H. C. Day, J. L. LaFevers and Lakeland Production Company, a co-partnership composed of Gordon Rockett, Harrill Rockett, Lexie Rockett, and J. L. LaFevers, Plaintiffs in Error,

v.

Robert L. FORD, Florence E. Ford, Ross Duckett, Jr., Frank Stauss, Marguerite Stauss, Howard Dreasler, Pauline Dreasler, Claud G. Berry, Naomi Berry, L. M. Stauss and Dove B. Stauss, Defendants in Error.

No. 37569.

Supreme Court of Oklahoma.

June 10, 1958.

Rainey & Barksdale, Okmulgee, Jack B. Sellers, Drumright, for plaintiffs in error.

Hurst & Scott, Pawnee, for defendants in error.

CARLILE, Justice.

This is an appeal by Gordon Rockett et al. from a judgment and decree of the District Court of Pawnee County in favor of Robert

L. Ford et al., wherein the court found the issues generally in favor of the plaintiffs, and specifically found that in the early part of January, 1953, W. E. Rockett, now deceased, Jack Kaufman, Gordon Rockett, Harrill Rockett, and other defendants, and Robert L. Ford and other plaintiffs entered into a joint adventure to develop an oil and gas lease on a tract of land in Pawnee County on which two parties named Cox and Duckett, who subsequently became parties to the adventure, had drilled a hole on the land to a depth of 1,300 feet. The lease was acquired on January 19, 1953 by the joint adventure in the name of the Lakeland Production Company, unincorporated, for the benefit of all the co-adventurers; that the company made certain assignments of partial interests in the lease to the co-adventurers, retaining in the name of the company an undivided $\frac{9}{64}$ths working interest which, according to the original agreement of the parties, was to be used to pay expenses of operating the adventure; that the assignments were a partial distribution of the adventure property and the $\frac{9}{64}$ths interest retained in the name of the company was held in trust for the benefit of all co-adventurers; that it was agreed that the $\frac{1}{60}$th interest of W. E. Rockett in the venture should be free of costs in the tanks on the first well only.

The court further found that a dispute exists between the members of the joint adventure, making it impossible to carry on the work and, therefore, the adventure should be dissolved, its property sold and distribution made to the several parties according to the interests owned by each, and as found and adjudged in the decree.

The court further found in connection with the accounting that the co-adventurers made certain payments to the Lakeland Production Company as operators of the property and in control of the defendants, Gordon Rockett, J. L. LaFevers and Harrill Rockett, which sums should be credited to the account of each such adventurer and charged to the Lakeland Production account as receipts of the co-adventurers for expenses.

Also further findings were made with respect to the cost of drilling three producing wells on the acreage, designated as Swalley 1-B, 2-B and 3-B, and the distribution of income therefrom, and found that defendants refused to contribute to the cost of drilling the third well, and pursuant to order of the State Corporation Commission accepted a bonus in lieu of their right to participate in the working interest of the well.

It was adjudged and decreed by the trial court that the joint adventure be dissolved and appraisers were appointed to appraise the property of the adventure, and that a sale thereof he had as in partition, the sale to include the producing wells, Swalley 1-B and 2-B.

The court further decreed title and ownership of Well 3-B, including the 10 acres on which located, insofar as it covers the Red Fork formation or sand, be quieted in the plaintiffs, and the defendants barred and enjoined from asserting any right, title or interest therein. The defendants' motion for a new trial was denied, and they appealed.

The parties will be referred to the same as they were in the trial court.

For a better understanding of the claims and issues we quote in part from the plaintiffs' petition as follows:

"That on or about January 19, 1953, the defendant, Harrill Rockett, J. O. (Leach) LaFevers, Gordon Rockett and W. E. Rockett, and Lakeland Production Company acting through said defendants and J. A. Kaufman, orally agreed with plaintiffs listed in the assignments set out next herein below that if said plaintiffs would join with J. A. Kaufman and said defendants owning an interest in said leases in financing the drilling of the wells on said leases that Lakeland Production Company would assign certain interest in said leases to the plaintiffs, J. A. Kaufman and the defendant owning an interest in said leases and that all would share in the profits to be realized from

said leases. That the proportionate share of the expense and the proportionate share of the profits would be determined by the proportionate share of ownership in the working interest of said leases. That at the same time said defendants and J. A. Kaufman represented and agreed with the plaintiffs as a part of said agreement that $\frac{9}{64}$ of $\frac{31}{32}$ of $\frac{7}{8}$ working interest in said leases would be retained in the name of Lakeland Production Company, in trust, for the owners of the working interest of said lease, and that this interest would be used to pay the operating expenses of the Swalley leases in so far as it would cover such expense, with any surplus thereof being applied to the drilling of subsequent wells or divided among the then owners of the working interest in the proportion in which the ownership of each in the leases bear to the whole."

Lakeland Production Company filed an answer by Gordon Rockett, Harrill Rockett, J. L. LaFevers and Lexie Rockett, who therein referred to themselves as co-partners, doing business under the firm name and style of Lakeland Production Company, in which they first demurred and moved the court to strike from plaintiffs' petition all averments tending to contradict or vary the written assignments in the leasehold involved, and allege that any and all oral agreements referred to in the petition were merged and superseded by the written assignments received by plaintiffs, which assignments were taken subject only to the verbal agreement that plaintiffs would take the interests assigned them with the drilling of Swalley Well No. 1–B to the top of the Bartlesville sand without obligation to contribute to the cost of drilling said well, and by their cross-petition allege that they, defendants, own a $\frac{9}{64}$ths interest in the leasehold to which plaintiffs claim some interest, title or trust, which claim is without foundation, and pray that defendants' title thereto be quieted as against the claims of the plaintiffs. The defendants further allege that a partition of the leasehold is necessary and pray the court to appoint commissioners to partition the same.

The record shows that the lease involved was assigned on January 19, 1953 to the Lakeland Production Company by the then owners, named Cox and Duckett, upon the condition and consideration that Cox and Duckett have a total interest and override of $\frac{21}{64}$ths of all production from the first well drilled free of cost, and a working interest in the second and any subsequent wells drilled.

The principal question and issue in the appeal relates to the question of ownership of the $\frac{9}{64}$ths interest in the lease held in the name of Lakeland Production Company. The trial court found and decreed that such interest was held in the name of the company in trust for the benefit of all the co-adventurers, which includes the plaintiffs. The defendants assert in their brief that they alone were members of the Lakeland Production Company, and that there was no agreement with plaintiffs in that regard; that they, defendants, as Lakeland Production Company, sold certain undivided interests in the lease to each of the plaintiffs or their assigns at the price of $750.00 per $\frac{1}{32}$nd interest, with a well to be drilled to the top of the Bartlesville sand, but subject to a pro rata share of the cost of operation and completion of the well, and subject to a pro rata cost of additional wells.

The first propositions advanced by defendants in support of their assignments of error are: The court erred in finding the relation of plaintiffs and defendants to be that of joint adventurers; parol evidence to vary or contradict the terms of the written assignments are inadmissible, and even if the admissions of parol evidence be proper the evidence does not support the finding of joint adventure or a resulting trust.

■ A joint adventure is defined as follows:

"A joint adventure is a special combination of two or more persons, whether corporate, individual or other-

wise, where in some specific venture a profit is jointly sought without the necessity of any actual partnership or corporate designation.

■ "The relation between the parties to a joint venture is fiduciary in its character, and requires the utmost good faith in all the dealings of the parties with each other." Vilbig Construction Co. v. Whitham, 194 Okl. 460, 152 P.2d 916.

■ Defendants, in their brief, review portions of plaintiffs' evidence and pleadings wherein it was alleged and testified that the oral agreements between the parties respecting the lease interest occurred some 18 days prior to the date of the written assignments, and defendants assert that the Statute of Frauds, Title 15 O.S.1951 § 136, Subsection 5, applies to the facts in this action and bars plaintiffs' claim to any part of the ⅝₄ths leasehold interest held in the name of the Lakeland Production Company. The section of Statute of Frauds cited and relied on is not controlling because the present action is not one to enforce a lease or sale of real property, but is one to establish a resulting trust and does not come within the Statute of Frauds but may be established by parol evidence.

"A resulting trust is not within the statute of frauds and may therefore be established by parol testimony." Scott v. Nelson, 198 Okl. 392, 179 P.2d 116.

Oral agreements from which a resulting trust arises are exceptions to the Statute of Frauds. Gill v. First Nat. Bank & Trust Co., 195 Okl. 607, 159 P.2d 717.

Defendants also rely on 60 O.S.1951 § 136, Subsection 1, which provides that no trust in relation to real property is valid unless created by a written instrument. The case of Abraham v. McSoud, 188 Okl. 409, 109 P.2d 822, cited by defendants, involved an oral contract to create an express trust in real property and was held invalid under the statute. The facts in the present action do not come within the holding of that case, nor the subsection of the statute relied on. The case of Adams v.

Adams, 208 Okl. 378, 256 P.2d 458, cited by defendants, holds that the facts in that case were insufficient to meet the requirements of the statute relating to an express trust, and also insufficient to establish a constructive or resulting trust. A different set of facts exists in the case at bar. Defendants concede that where the facts are sufficient a constructive or resulting trust may arise, but assert that no such facts are alleged or shown. The opinion in Childers v. Breese, 202 Okl. 377, 213 P.2d 565, 567, states as follows:

"A resulting trust is one of the classes of trusts, which arise by operation of law and may exist where an express trust could not exist, since it may arise without being created in writing, being based upon presumption or inference of law and not upon expression of the trustor's intention. Sec. 54 Am.Jur., Trusts, section 186 et seq.; Crane v. Owens, 180 Okl. 452, 69 P.2d 654; Courts v. Aldridge, 190 Okl. 29, 120 P.2d 362. Such trusts are not within the statute of frauds. McGill v. McGill, 189 Okl. 3, 113 P.2d 826.

"In 54 Am.Jur., Trusts, section 196, it is said: 'The doctrine of resulting trusts is a familiar one in equity jurisprudence. Most broadly speaking, a resulting trust arises from the nature or circumstances of consideration involved in a transaction whereby one person thereby becomes invested with a legal title * * * for the benefit of another, the intention of the former to hold in trust for the latter being implied or presumed as a matter of law, although no intention to create or hold in trust has been manifested, expressly or by inference, and although there is an absence of fraud or constructive fraud. * * *.'"

■ We think the testimony and evidence of plaintiffs in the present action are sufficient to create or establish a trust by operation of law.

■ Defendants next say that a written contract merges oral negotiations and oral

evidence, tending to vary or contradict its terms is not admissible. The rule is well established, but its specific application to the case at bar is not pointed out. The purpose and effect of the oral testimony of the plaintiffs, to which the defendants duly objected, was not to vary or contradict the written assignments of interest in the leasehold, but was to show that the ⁴⁴/₆₄ths interest in the leasehold was to be set aside and held in trust for the use and benefit of all parties to the venture, the income therefrom to go into a fund to be used in the paying of expenses of operation and any surplus to be used in drilling other wells. Apparently the assignments of interests in the leasehold to the various interested parties did not purport to express the entire agreement between the parties nor constitute the agreement upon which the joint adventure was formed. Defendants assert that the assignees were not to pay any part of the costs of drilling the first well to the Bartlesville sand, but they were required to pay a pro rata share of the cost of completing and operating the well. No such agreement is embodied in the assignments, and it is apparent that the assignments do not express the entire agreement or contract.

The case of Ross v. Grimes, 199 Okl. 403, 186 P.2d 809, involved the sale under oral agreement of a grocery store and equipment. A bill of sale had been issued to the buyer but it failed to describe a new meat grinder which the buyer testified was included in the purchase. Objection was made to the buyer's evidence on the ground that such evidence tended to vary and add to the terms of the written bill of sale. In passing on the question on appeal the opinion states that the contention would be correct if the bill of sale had purported to express the entire agreement and had been executed prior to the time the contract was performed on the part of the buyer; that it was not the intent and purpose of the parties in executing the bill of sale to put in writing the agreement of the parties, but rather for the purpose of showing a transfer of title and in part execution of

the prior oral agreement. The opinion cites as authority 20 Am.Jur. 969, Sec. 1106, also 989, Sec. 1135; the latter section of which states:

"It has been stated that the parol evidence rule is not applicable to instruments which from their very nature do not attempt to state the entire agreement in respect of the subject matter, but are adapted merely to transfer title in execution of an agreement they do not profess to show."

The decisions cited by defendants in support of their contention are cases where all the terms and conditions of the contract were incorporated in the subsequent written agreement, and to that extent differs materially from the present action. We see no error in the admission of plaintiffs' evidence.

The defendants further state and present the proposition that even if the admission of parol evidence be proper the record does not support a finding of joint adventure or a resulting trust. In support of their proposition decisions are cited which hold that a resulting trust may be established by parol evidence, but the evidence must be clear, unequivocal and decisive, citing Coryell v. Marrs, 180 Okl. 394, 70 P.2d 478 and Fibikowski v. Fibikowski, 190 Okl. 152, 121 P.2d 304. We think the evidence sufficiently clear and decisive to meet the rule necessary to establish a resulting trust. Robert L. Ford, a plaintiff, testified in part that Mr. LaFevers told him that W. E. Rockett had located a lease in Pawnee County with a well drilled to 1300 feet, that he felt sure the lease could be obtained by giving the former owners an override on the first well. He also stated that to start with "We should put up $750.00 a 1.32nd to start the operation to go as far as it would, and in case those funds were exhausted additional sums would be added, the costs of the well to be borne according to the lease ownership; the $750.00 to be an advance upon the costs." Mr. LaFevers further stated that a ½₆th would be set up to take care of the expenses of the lease and if the income of the ⅛₆th amounted to more than the ex-

penses it would be applied to future drilling or distributed among the owners of the lease. The testimony of the other plaintiffs was in accord with that of Mr. Ford. Jack Kaufman, one of the original members of the Lakeland Production Company, and one of those who signed the assignments of interests in the leasehold, and who subsequently sold and assigned his interest in the leasehold, testified:

"We discussed the fact that there were $\frac{5}{64}$ths interest in the Swalley lease, the title to which had not been transferred to any individual, and because we had these $\frac{5}{64}$ths left it was my understanding, or the understanding of those I thought in the group there, that that money would go into a common fund, and it was also my understanding that it would be used to pay the expenses of operation, etc. of the venture we were at that time in. * * *. Now, that was my understanding that no one, none of us, would realize any monetary value from the $\frac{5}{64}$ths, that it would go to pay the operating expenses of the lease."

The evidence is of considerable volume, and we think it unnecessary to here attempt to review the same, and deem it sufficient to say that we have considered the record and evidence as a whole and find it sufficient to sustain the judgment of the trial court.

■ "In an action of equitable cognizance, where the evidence is conflicting, the finding thereon of the trial court will not be disturbed unless clearly against the weight thereof." Hill v. Hill, 202 Okl. 483, 215 P.2d 553, 554.

We find the judgment supported by the clear weight of the evidence.

Defendants next present the proposition that the court erred in not holding the interest of W. E. Rockett, deceased, to be an overriding royalty interest in the lease. The record shows an assignment to W. E. Rockett of a $\frac{1}{64}$th overriding royalty interest in the lease, free of any charges or expenses of production, operating or marketing. The assignment was signed by W. E. Rockett, Harrill Rockett, J. A. Kaufman, J. A. LaFevers and Gordon R. Rockett, the original parties who adopted the name of Lakeland Production Company, and who acquired the lease in that name.

■ Plaintiffs testified that the assignment to W. E. Rockett was made without their knowledge or consent, and that the assignments to them of an interest in the lease made no reference to the overriding royalty interest assigned to W. E. Rockett, and that the assignment to him was in the nature of a gift or compensation for what they referred to as locating the lease. There was evidence that the parties to the adventure later agreed that the overriding interest assigned to W. E. Rockett should apply only to the first well. The assignee, Rockett, recognized the agreement and acquiesced therein by paying his pro rata share of the cost of the second well, B-2, drilled on the leasehold. We find no error in the action of the trial court with respect to the assignment.

The final proposition advanced by the defendants is that improper evidence was considered by the court. It is based on the testimony of Jack Kaufman, an original member of the joint adventure, who had sold and assigned his interest at the time of the trial. When he was called as a witness the court made the following statement:

"Let the record show that this is a defendant's witness called out of turn. In other words, we are taking his testimony in the way of a deposition, to be considered by the court at the proper time, and without the rights to waiving any of the rights to demur, etc."

Defendants now say his testimony was taken as a deposition and was not offered by them, or the plaintiffs, and should not be considered by the court. Apparently the trial judge did not give much consideration to the testimony of the witness because after he was examined at considerable length by defendants' attorney the court said:

"I don't believe this witness knows anything that would be helpful. I suggest we dispense with him."

No objection was made to a consideration of the evidence until defendants moved to delete it from the case made. The court overruled the motion, and in so doing stated that the witness was called by defendants and examined out of time and it was not a deposition, as referred to by defendants. We find no merit in defendants' last proposition.

Judgment of the District Court affirmed.