**Arthur KELLEY, Petitioner,**

v.

**John A. RISENHOOVER and State Industrial Court, Respondents.**

**No. 43606.**

Supreme Court of Oklahoma.

May 26, 1970.

Wilcoxen, Gephart, Lunn & Mayes, Muskogee, for petitioner.

Bonds, Matthews & Mason, Muskogee, G. T. Blankenship, Atty. Gen., for respondents.

JACKSON, Justice.

The decisive question is whether claimant, John A. Risenhoover, was engaged in hazardous employment as defined by the Workmen's Compensation Act, 85 O.S. Supp.1967, Sec. 2.

On August 20, 1968, claimant was an employee of Arthur Kelley. Employer, Kelley, was engaged in buying and selling hogs. He bought hogs in Missouri, Iowa, Nebraska, and South Dakota; hauled them in his trucks to Muskogee, Oklahoma, where he unloaded, fed, and watered the hogs for two or three days before reloading the hogs for transportation and sale to packing plants in Texas and Oklahoma.

Employer's principal place of business is Muskogee, Oklahoma, where he has hog pens and appropriate equipment for caring for the hogs while they are in that City. He owns four or five trucks which he uses in this operation.

Claimant's principal duties are unloading, feeding and watering, and reloading the hogs. He repairs and rebuilds fences, repairs trailer beds, stock racks used on the transport trucks, and assisted another employee (mechanic) in repairing and maintaining the trucks.

At the time claimant was injured, he was lying beneath one of the trucks removing the oil pan and helping the mechanic locate an oil leak. One of the truck drivers came to where claimant was working and provoked a fist fight. Claimant returned to his duties under the truck and a few minutes later was attacked by the truck driver with a 2″ x 4″ piece of wood. The Industrial Court awarded compensation for claimant's injuries and this proceeding for review is brought by the employer, Kelley. Kelley carried no compensation insurance.

In argument to sustain the award claimant states:

"If respondent (Kelley) was purchasing and transporting and possessing the hogs for himself, then his operation falls within the clause of 85 O.S. 2 (85 O.S.Supp.1967, Sec. 2) covering 'motor

vehicles used to transport products manufactured or processed by business concerns.' If respondent's operation was actually designed for the transportation and possession of the hogs actually purchased by his customers, as the evidence tends to indicate (CM 39, 40), then his operation falls within the clause of Section 2 covering "transfer or storage.' "

We are unable to share those views.

■ We have held that before a liberal construction is applicable in favor of a claimant it must first be proved that the employment is in a class embraced within the provisions of the Act. Mid-Continent Cas. Co. v. Miller, Okl., 451 P.2d 932.

85 O.S.Supp.1967, Sec. 2, provides in pertinent part:

"Compensation provided for in this act shall be payable for injuries sustained by employees engaged in the following hazardous employments, to wit: * * * work shops where machinery is used; * * * transfer or storage, * * * motor vehicles used to transport products manufactured or processed by a business concern, * * *."

It is not contended that claimant was injured while working in a work shop where machinery was used. It appears from the testimony that no power-driven machinery was used.

We are unable to conclude that the "evidence tends to indicate" that Kelley's operation was actually designed for the transportation and possession of hogs actually purchased by his customers, or that he was engaged in "transfer or storage".

Claimant testified that Kelley's business was a trucking operation, but he did not know whether Mr. Kelley bought and sold the hogs or whether he was trucking them for buyers at the packing plants. Kelley testified that he was never in the trucking business. He further testified that he was not paid for hauling the hogs, but was in the business of buying and selling hogs—"they are my hogs." He testified that he bought hogs from sources of his own selection; took title in his own name; could sell them

wherever he found a market; and if any hogs died in transit it would be his loss. He did not get paid a stipulated amount per pound for hauling the hogs. He did testify that the processors or packing plants frequently issued their checks directly to the persons from whom Kelley had purchased the hogs. He also admitted that his personal funds were not used to pay for the hogs, however, he was firm in his testimony that he bought the hogs that he hauled and didn't haul any hogs that he didn't buy.

In this connection, we note that in 1941, the phrase "transfer and storage" in 85 O.S.1961, Sec. 2, was changed to "transfer or storage". We have found no case in which this court has directly construed the phrase since the 1941 amendment. In most of the pre-1941 cases denying coverage under "transfer and storage", it was held that elements of both "transfer" and "storage" must be present in order to justify coverage. See Veazey Drug Co. v. Bruza, 169 Okl. 418, 37 P.2d 294; Followill v. Marshall, 157 Okl. 276, 10 P.2d 684. In those and similar cases, in demonstrating that the employer was not in the storage business, this court held in effect that "storage" meant "storage for hire". In *Veazey* we said that an employer " * * * storing *his own* property * * * could not be said to be in the storage business" (emphasis supplied). In *Followill,* we said that "where no compensation is charged for the service of storage" the employer is not in the storage business.

■ Now that our legislature has extended coverage to either transfer *or* storage, we think the same reasoning must be applied to the transfer business, and that an employer, such as the respondent in this case, who transfers only his own property, is not in the transfer business. See Melton v. A. C. F. Wrigley, Inc. (1961), Okl., 365 P.2d 557, 559.

■ The next question is whether Kelley's trucks were used by him to transport products processed by him within the meaning of 85 O.S.Supp.1967, Sec. 2. We

are of the view that Kelley's transportation and feeding and watering of the hogs is not within the definition of "processed" or processing the hogs.

In 72 C.J.S. page 975, in connection with the definition of "process" it is said that the word has a great variety of meanings, and denotes a progressive action or series of acts or steps, in the regular course of performing, producing, or making something. It may be an act, a series of acts, or a mode of acting. In Webster's Third New International Dictionary (unabridged) 1961, under the definition of "process" it is said:

> "To subject to a particular method, system, or technique of preparation, handling, or other treatment designed to effect a particular result: put through a special process: as (1) to prepare for market, manufacture, or other commercial use by subjecting to some process (processing cattle by slaughtering them— processed the milk by pasteurizing it— processing grain by milling—processing cotton by spinning)."

In Colbert Mill & Feed Co. v. Oklahoma Tax Commission, 188 Okl. 366, 109 P.2d 504, after quoting the definition of "process" as contained in Webster's Second Edition, International Dictionary (1939) we concluded that the feed used by Colbert in fattening livestock for others was processed when it was mixed and made ready for sale for feeding purposes; that it was consumed, not processed, when it was fed to the livestock; and that the cattle were "processed" or "prepared for sale" when they were slaughtered, dressed, and cured, and thereby made ready for human consumption. We said the feeding was a preliminary step in getting the cattle ready for "processing" or "preparing for sale."

In the instant case we are unable to conclude that the activity here described is within the scope of the Workmen's Compensation Act. To hold that feeding and watering hogs on the way to the packing plant by a hog buyer constitutes "processing" or "processed" would give the word "processed" a broader meaning than contemplated by the Legislature.

Claimant invites our attention to Thomason v. Morrison (1958), Okl., 321 P.2d 959. In that case the court found that the activity involved therein, operating motor vehicles for transporting passengers for compensation, was enumerated in and defined as hazardous by the Workmen's Compensation Act. In the instant case we are unable to conclude that the activity in which claimant was engaged is defined and enumerated in the Act as hazardous.

Award vacated.

BERRY, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, HODGES, LAVENDER and McINERNEY, JJ., concur.