Alvin G. BEALL, III, Petitioner,

v.

ALTUS PUBLIC SCHOOL DISTRICT, Jack Davis, St. Paul Insurance Company, Truck Insurance Exchange, Farmers Insurance Group, and Workers' Compensation Court, Respondents.

No. 55023.

Supreme Court of Oklahoma.

July 28, 1981.

J. Mike Lawter, Manners, Cathcart & Lawter, Oklahoma City, for petitioner.

John A. McCaleb, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for respondents, Altus Public School District and St. Paul Ins. Co.

H. A. Bud Carter, Oklahoma City, for respondents, Truck Ins. Exchange and/or Farmers Ins.

B. E. Harkey, Oklahoma City, for respondent, Jack Davis.

LAVENDER, Justice:

Alvin G. Beall III, petitioner, filed a claim in the Workers' Compensation Court seeking benefits for an injury received on October 10, 1977, while working on a house construction project for his high school carpentry shop class. Respondents defended this claim on the grounds that petitioner was not an employee at the time of the accident, therefore he was not entitled to worker's compensation. Order was entered finding petitioner was not working for "wages" (paid by either respondent) as required by 85 O.S.1971 § 3(3) and defined in 85 O.S.1971 § 3(8), therefore petitioner was not an employee of either; that respondent Davis was not an employer for the additional reason that he exercised no control or direction over the petitioner; denying the claim.

On appeal to the Workers' Compensation Court en banc, the order was affirmed. Petitioner perfected appeal to this Court, the cause was assigned to the Court of Appeals, Division 2. There, the order was reversed and remanded. The Court of Appeals found that petitioner was an employee on the basis that wages are not essential to be an employee and finding petitioner to be an employee of both respondents on the basis that the house project was a joint venture. Rehearing was denied by the Court of Appeals, January 7, 1981. Respondent sought writ of certiorari which was previously granted.

When the existence of the employer-employee relationship is an issue before the Workers' Compensation Court, a jurisdictional question is presented and the Supreme Court on review will not accept findings of that court as conclusive, but will weigh evidence contained in the record and independently evaluate law and facts to determine the existence or absence of the relationship. *Matter of Worcester*, 576 P.2d 1168 (Okl.1978); *Herron Lumber Co. v. Horn*, 446 P.2d 53 (Okl.1968), and *Hillcrest Hospital v. State Industrial Court*, 452 P.2d 781 (Okl.1969).

The evidence shows that the setting leading to this controversy is not in dispute.

Petitioner was a 15 year old high school sophomore at Altus High School, hereinafter Altus. He was enrolled in the carpentry shop class. Mr. Killebrew, shop teacher for respondent Altus, approached respondent Mr. Davis to sponsor a house construction project, hereinafter the project, for the carpentry class, as had been done in prior years by other sponsors. Mr. Davis was not a house builder but agreed to sponsor the project for the 1977–1978 school year. According to that agreement, Davis was to buy a lot picked by Killebrew, pay for all materials used to build the house, all of which Killebrew ordered, and to pay Altus one dollar ($1.00) per square foot upon completion of the house. This sum, according to testimony by Killebrew, was for maintenance, repairs, and replacement of shop tools. The agreement also provided "one of the functions of this class is to give the students training in the actual construction of residences; and whereas, the activities of this class are purely educational in nature . . . ." Davis, upon completion of the house, could then sell it. The record does not indicate whether Davis made a profit on the sale but does indicate that he had no control of any of the work done on the project or anyone working on it. His only connection with the project while it was under construction was to meet at various times with Killebrew to discuss payment of bills for materials.

Petitioner, while working on the project and in performing a task under the direction of Killebrew, was permanently injured in his right eye by a nail bouncing back after being struck by petitioner's hammer. This injury occurred on October 10, 1977.

Petitioner contends that there existed an employer-employee relationship between respondent Altus and himself based on the proposition that Killebrew, the shop teacher, maintained control and superintendence over petitioner while working on the project, citing *Clark v. First Baptist Church*, 570 P.2d 327 (Okl.1977). The Court in *Clark*, in stating that the determinative test used to establish an employer-employee relationship is whether control and superintendence was exercised over the claimant, was determining whether the worker in the fact situation presented to them was an employee or independent contractor. Also, the cited case affirmed Industrial Court order refusing to find existence of a contract for wages based on credit to church members' tithing for services performed for the church. We fail to see how this case is helpful to petitioner here.

Petitioner admits that before the benefits under the Worker's Compensation Act are available to him he must establish a contract of employment between himself and one or both of the respondents. In *Landrum v. Ownby*, 290 P.2d 400 (Okl.1955), we stated:

> The relation of employer and employee is a first prerequisite to any award under the compensation act, and such relation is created by contract, either express or implied, or by the unequivocal acts of the parties recognizing the relationship.

See also *McCowan v. Ford*, 495 P.2d 1283 (Okl.1972); *Smith's Estate v. Hearon*, 424 P.2d 970 (Okl.1967); *Mahl v. McMahan*, 325 P.2d 78 (Okl.1958); *El Reno Broom Co. v. Roberts*, 138 Okl. 235, 281 P. 273 (1929); *Moore & Gleason v. Taylor*, 97 Okl. 193, 223 P. 611 (1924); *Landrum v. Ownby, supra*. Petitioner contends a contract of employment was implied between petitioner and respondents Altus and Davis because the latter profited on the project. We find no authority for the proposition that the making of a profit on a project by someone necessarily creates an implied contract of employment between the latter and one who has worked on the project.

We have stated that "for the workmen's compensation law, the contract must be to labor for agreed 'wages,' as that term is defined in that law." *Parten v. State Industrial Court*, 496 P.2d 114 (Okl.1972). In the case at bar, the Workers' Compensation Court found that claimant was not working for "wages" as defined in 85 O.S.1971 § 3(8). We sustain that finding for reasons stated below.

According to A. Larson, *Workers' Compensation Law*, § 47.40 et seq.:

> The word "hire" [in contract for hire] connotes payment of some kind. [C]ompensation decisions uniformly exclude from the definition of "employee" workers who neither receive nor expect to receive any kind of pay for their services.

Further, he states:

> Although ... the performance and acceptance of valuable service normally raises an implication that payment for the services is expected, this implication does not arise when the circumstances negative such an expectation.

Larson then lists gratuitous workers who are working to advance their own interests among such circumstances. In the case at bar, petitioner was advancing his own interests in working on the project by perfecting his carpentry skills. In any event, a review of the record indicates that petitioner did not expect to receive any kind of pay for working on the project. This does not eliminate the issue, however.

Larson, further in his treatise, states:

> The element of payment, to satisfy the requirement of a contract for hire, need not be in money, but may be in anything of value. § 47.43(a) at 8–285.

He then cites cases where training received by a student has been considered by some courts to be the equivalent of wages. There are also contra cases cited therein.

This court was confronted with such an issue in *Hillcrest Hospital v. State Industrial Court*, 452 P.2d 781 (Okl.1969). In that case, the claimant, a student nurse, as a part of her training, was selected by a supervisor to deliver a lecture to a class of student nurses. While she was on her way to the classroom to perform this service (one of obvious benefit to the nursing school as well as to the student/claimant), she fell on some stairs and suffered an injury. This court, in vacating her award, found that there was no evidence that a contract of employment was consummated between the claimant and the hospital. We also rejected claimant's contention that her board and room rate at the hospital, being less than what similar quarters elsewhere would cost, was a form of compensation.

 In our view, the *Hillcrest* case is analogous. There is no evidence that a contract for hire, express or implied, existed between petitioner and either respondent. There is also no evidence that petitioner received wages as defined in 85 O.S.1971 § 3(8). Since a contract for hire is an essential element to the creation of an employer-employee relationship, it follows that in the absence of such contract, the Workmen's Compensation Act is not applicable. Although the Workmen's Compensation Act is construed liberally in favor of those entitled to its benefits, a claimant must be held to strict proof that he is in a class embraced with the provisions of the Act. *Kelly v. Risenhoover*, 470 P.2d 334 (Okl.1970); *Hillcrest Hospital v. State Industrial Court, supra, Mid-Continent Cas. Co. v. Miller*, 451 P.2d 932 (Okl.1968); *Marr v. American Flyers Airline Corp.*, 443 P.2d 961 (Okl. 1968). Upon review of the record in the case at bar, we find that petitioner did not prove he was in the class embraced by the Workmen's Compensation Act.

Decision of the Court of Appeals, Division 2, is vacated, order of the Workers' Compensation Court en banc is affirmed.

IRWIN, C. J., BARNES, V. C. J., and SIMMS and HARGRAVE, JJ., concur.

WILLIAMS, HODGES and OPALA, JJ., dissent.

SIMMS, Justice, concurring.

I concur with the majority view. It is not without irony that given these same circumstances today, this injured student, whom the Dissenting Opinion argues should be allowed to come within the scope of the Act as an "apprentice", would be barred from proceeding under the Act by this Court's decision in *Wilsey Bennett Co. v. Grant*, 632 P.2d 382, 52 OBAJ 1379 (June 9, 1981). On his first Form 3 he named only Davis as a respondent. The school district was not added on his claim until one year from the date of the injury had passed. Under the rule pronounced in *Wilsey Bennett*, the claim against the school would be barred even though the filing was timely against Davis.

OPALA, Justice, dissenting:

Under consideration here is a compensation claim. Its denial by the trial tribunal's review panel of three judges—later reversed in an opinion of the Court of Appeals, Div. 2—is now ordered reinstated in today's pronouncement of this court. I cannot join in the decision because, in my view, the claim should be allowed.

I.

## DISPOSITIVE ISSUE AND ITS RESOLUTION

The issue central to this controversy—in which the facts are not in dispute—is whether the claimant, when injured, stood in an employment relation to *either* of the two respondents named in the case—the school district [District] where he was a carpentry class student or *Davis*, the individual entrepreneur who was the sponsor of the District's on-the-job training program in residential building for students in trade-and-industry classes. I would *hold* that claimant's status *vis-a-vis* the District was that of an *apprentice* in the service of his *master*—a recognized variant of the common-law "servant"—and as to Davis, that of an "intermediate" or "remote" employee

*vis-a-vis* the principal (statutory) employer on the job.[1]

## II.

## FACTS

At the time of his injury claimant and his classmates—all carpentry shop high school students—were performing labor, under the supervision of their vocational instructor, at an extramural job site where a residential house was being erected under an agreement between the District and Davis. This construction—an educational program repeated year after year—was designed to offer the trade-and-industry students of the District the opportunity to earn three credits in on-the-job vocational training. A landowner willing to sponsor the annual project provided the drawings and specifications for the desired structure. He bound himself contractually to pay the actual cost of all materials that were needed and one dollar per every square foot of space that was built. The money collected from the sponsor—in the case of Davis, about eleven hundred dollars—was used by the District to help finance its vocational program.

## III.

## CLAIMANT'S STATUS *VIS–A–VIS* THE DISTRICT

The trial judge's order denying the claim—affirmed *in toto* by the tribunal's statutory review panel of three judges—rests on the legally *erroneous* predicate that "... without working for wages as required in 85 O.S.1971 § 3(3) and as defined in 85 O.S.1971 § 3(8) ..." one cannot be brought within the purview of benefits provided by the workers' compensation regime.[2] The master's liability for payment of wages is not an essential element in the creation of a master-servant status.[3] But even if it were, the provisions of § 3(8) clearly contemplate, if not explicitly recognize, a wide range of permissible substitutes for the payment of wages. *Any other* nonmonetary "advantage" received from the employer—"similar" to money, board, rent, housing or lodging—is declared sufficient to satisfy statutory standards for remuneration.[4] These legislatively prescribed alternatives were indeed met here. The "advantage" exacted in lieu of wages, which the claimant was in fact receiving, can easily be found present in the form of teacher-supervised practical experience on the job, with an opportunity to develop marketable vocational skills and to secure a record of past work activities, along with three units of credit.

The significant aspect of claimant's deployment—*dehors* the regular shop instruction milieu—at an extramural job site, at which he was providing labor under the

---

1. The "principal", "general" or statutory employer—a term defined by 85 O.S.1971 § 11—is one who is secondarily liable for compensation to his independent contractor's employees. *Murphy v. Chickasha Mobile Homes, Inc.*, Okl., 611 P.2d 243, 248 [1980].

2. The accident in suit took place on Oct. 10, 1977. It is hence governed by provisions of law in force before their massive amendment in 1977.

3. It is highly doubtful that our compensation system requires any recompense to the worker. It is only his *status* as servant that matters. The Court of Appeals correctly stated in its opinion that "wages" is a factor with no purpose other than as an aid in computing the applicable compensation rate. See 85 O.S.1971 § 21. Liability for monetary remuneration is not a *sine qua non* element of an employer-employee relationship. *Crutchfield v. Melton*, Okl., 270 P.2d 642 [1954]; *Londagin v. McDuff*, 207 Okl. 594, 251 P.2d 496 [1951]; *Byrne Doors, Inc. v. State Indus. Comm'n*, 193 Okl. 541, 145 P.2d 754 [1944]; *Southland Cotton Oil Co. v. Renshaw*, 148 Okl. 107, 299 P. 425 [1931]. The first three cases invoke the loaned-servant doctrine and the last one involves a volunteer worker. In *Parkhill Truck Company v. Reynolds*, Okl., 359 P.2d 1064, 1067 [1961], we said that: "The existence of an obligation to pay wages is not exclusively controlling in determining whether a given master, general or special, is responsible for the acts of a servant or for compensation to an injured workman."

4. The terms of 85 O.S.1971 § 3(8) are: " 'Wages' means the *money rate* at which the service rendered is recompensed under the contract of hiring in force at the time of the injury, including the reasonable *value of board, rent, housing, lodging, or similar advantage received from the employer*." [emphasis ours].

District/Davis contract, is that it operated to change his legal relationship with the school *from that of student-teacher to one of apprentice-master.* The latter—a common-law variant of a master-servant relation—is an ancient institution of Anglo-American law which is far from being alien to the Oklahoma legal system.[5]

My search of the Oklahoma case law yields no precedents in which either the ancient form of apprenticeship or its modern counterpart met with judicial exposition. The institution is firmly embedded in our statutory law[6] and was given recognition in *Hillcrest v. State Industrial Court,* Okl., 452 P.2d 781, 784 [1969]. There the court found it inapplicable because the student nurse injured in that case sustained an accident in an intramural setting while performing school-related activities.

One who, as a student, is rendering services to his teaching institution for its pecuniary gain, occupies in law the status likened to that of an apprentice. In modern law, an apprentice is one who, while in the course and for the purpose of learning a trade, provides labor to the master, for the latter's pecuniary gain, in return for some advantage other than regular wages.[7]

The District's commitment of claimant's labor to the Davis project, coupled with claimant's acquiescence by his on-the-job participation as a carpentry worker, amounted in law to a mutual assumption by the parties of a master-apprentice bond.

One can be considered "a student for some purposes and an ... [apprentice] for others".[8] In this case, the claimant remained a student as to his in-school activities, but became an apprentice when functioning on the extramural job site. Conversely, when the District undertook to use student labor at an *extramural* workplace to confer and to receive benefits under a contract with Davis, it shed its *intramural* role as *teacher* to become the claimant's common-law *master.* The changed scenario calls for a vastly different set of surrounding jural responsibilities. The District transformed itself into claimant's master by the act of deploying his services in an extra-scholastic setting in return for a pecuniary gain due it under the agreement with Davis. As an apprentice on a construction job claimant stands clearly in the very same position for compensation benefits as any other servant.[9]

The relation of employer and employee is contractual in the sense that it is the product of *aggregatio mentium*—a meeting of

---

5. In its *popular* and *modern* sense, an apprentice is a learner in an art, employment or business. *City of St. Louis v. Bender,* 248 Mo. 113, 154 S.W. 88 [1913]. In a *technical* sense of the ancient law, an apprentice is a person bound in due form of law to serve another for a specified time in order to learn some art, trade, profession or business in which the master is bound to instruct him. *Delaware, L. & W.R. Co. v. Petrosky,* 2 Cir., 250 F. 554, cert. den. 247 U.S. 508, 38 S.Ct. 427, 62 L.Ed. 1241 [1918].

Our criminal law still extends protection to what are unmistakably the ancient notions of a master-apprentice relationship. See 21 O.S. 1971 §§ 133, 643(4) and 837.

Legislative recognition of what may be regarded as present-day notions of apprenticeship status can be found in 19 O.S.1971 §§ 863.34; 40 O.S.1971 §§ 197.11(a) and 273; 59 O.S.Supp.1977 § 76; and 59 O.S.1971 §§ 199.1(f), 396.2(c) & 1003 (5).

Until the repeal of 56 O.S.1971 § 40(7) in 1976, Okl.Sess.Laws 1976, Ch. 149 § 1, the old English principle that an apprentice has his legal residence with the master stood legisla-

tively declared. See Graveson, infra note 12 at 41.

6. See citations to the Oklahoma statutory material in footnote 5.

7. *Wright v. Wilson Memorial Hospital, Inc.,* 30 N.C.App. 91, 226 S.E.2d 225, 226 [1976]; *Galligan v. St. Vincent's Hospital of N.Y.,* 28 A.D.2d 592, 279 N.Y.S.2d 886, 889 [1967]; *Heget v. Christ Hospital,* 26 N.J.Misc. 189, 58 A.2d 615, 616 [1948].

8. *Wright v. Wilson Memorial Hospital, Inc.,* supra note 7 at 226.

9. See cases cited in note 7.

The District is under *no* express statutory disability that precludes it from being an employer for workers' compensation purposes when it undertakes to act as it did here, *qua* private entrepreneur. *Driskell v. Independent School Dist. No. One of Tulsa Co.,* Okl., 323 P.2d 964 [1958] is inapposite because there the school district was relieved of liability as a *public* entity.

the minds. The formation of a binding contract of service may be shown by evidence.

> " ' . . . which tends indirectly to prove the fact of acceptance [by the servant]—as, for example, that the alleged servant did the work in question with the consent and for the benefit of the alleged master . . . or that he [the alleged servant] performed functions which only a person in the position of a servant was entitled to perform.' " [10] [emphasis supplied].

Claimant's legal condition vis-a-vis the respondent in a compensation proceeding is to be determined not from the agreement of the parties alone but rather from the circumstances under which it was made and from the conduct of the parties toward each other while the work was being performed.[11]

The master-servant relationship that is the sine qua non element of every compensation claim is a mixed notion of contract and status: contract because it is generally consensual, i. e. voluntary; and status because in some instances it may be imposed not as the result of an intentional private act but involuntarily as a legal consequence attached by the rule of law to the conduct and interaction of the parties.[12]

To the interaction of claimant with the District at the critical time in suit the law can attach no other status than that of an apprentice vis-a-vis his master.

### IV.

### CLAIMANT'S STATUS VIS-A-VIS DAVIS

Davis was an entrepreneur building a house for resale under an agreement with the District, an independent contractor. He exercised no control over the building crew of students nor did he undertake to share with the District any profits or losses. The District's vocational instructor had the undivided supervision of the job site. Davis was hence neither a co-employer nor a joint venturer.[13] His status, vis-a-vis the District, is to be viewed as that of a general contractor toward a sub-contractor on the same job. The terms of § 11 clearly impose on Davis secondary liability for securing the compensation benefits due to the District's employees.[14]

I would remand this cause to the Workers' Compensation Court with directions to treat the District as the claimant's immediate employer and Davis as his general (statutory) employer who is secondarily liable under § 11.

I am authorized to state that WILLIAMS, J., concurs in the views expressed in this opinion.

---

10. *Hogan v. State Industrial Commission,* 86 Okl. 161, 207 P. 303, 304 [1922].

11. *Brewer v. Bama Pie, Inc.,* Okl., 390 P.2d 500, 502 [1964].

12. *Brewer v. Bama Pie, Inc.,* supra note 11; Graveson, *Status in the Common Law,* 41, 51 and 59.

13. *Wickham v. Belveal,* Okl., 386 P.2d 315, 318 [1963]; *Rockett v. Ford,* Okl., 326 P.2d 787, 790-791 [1958]; *Bosworth v. Eason Oil Co.,* 202 Okl. 359, 213 P.2d 548, 551-553 [1950].

14. *Murphy v. Chickasha Mobile Homes, Inc.,* supra note 1.