**Cora D. RICE, Petitioner,**

v.

**Jess G. MORTENSEN d/b/a Steer Inn, Ron Remschner, d/b/a Antlers Livestock, and Workers' Compensation Court, Respondents.**

**No. 62313.**

Court of Appeals of Oklahoma, Division No. 4.

Aug. 7, 1984.

Paul F. Fernald, Keller & Fernald, Oklahoma City, for petitioner.

Eugene Robinson, McGivern, Scott, Gilliard & McGivern, Tulsa, for respondents.

DeMIER, Presiding Judge.

Worker Cora D. Rice appeals the May 1, 1984, order of Workers' Compensation Court en banc, affirming trial court, which denied benefits to Worker for the reason that she was not an employee within the meaning of 85 O.S.1981 § 11. Based on our independent review and weighing of the evidence and applicable law, we find court en banc's order, affirming trial court, supported by the weight of the evidence and affirm.

## FACTS

On August 5, 1982, Worker, a waitress at the Steer Inn, injured herself when she slipped and fell on a wet floor while waiting tables. She timely filed a workers' compensation claim on July 26, 1983, naming Jess G. Mortensen d/b/a Steer Inn as her employer. Although not part of the record before us, Worker apparently amended her Form 3 to also name Ron Remschner d/b/a Antlers Livestock. By stipulation and court order, Mr. Mortensen was not a part of the compensation trial proceedings because of a bankruptcy stay.

Instead, on February 13, 1984, trial court heard evidence on a "motion for summary judgment" filed in December of 1983, on behalf of Mr. Ron Remschner d/b/a Antlers Livestock, who denied being Worker's employer. Trial court found Remschner was not Worker's employer, and Worker appealed.

The facts are not disputed. Worker testified Mortensen d/b/a Steer Inn interviewed her, hired her, paid her with his Steer Inn checks, withheld her taxes, and supervised her. She reported to him if she were ill. She testified that only Mortensen directed her as to what duties she was to perform. She had no communication with the Remschners.

In his deposition, Jess Mortensen testified Worker was "an employee" of his, hired by him when he began doing business as the Steer Inn in the summer of 1982. He testified he paid her, withheld her taxes, and directed all her activities.

His business, Steer Inn, was located inside the Antlers Livestock Exchange, a building owned by Ron Remschner d/b/a Antlers Livestock. Mortensen testified he and the Remschners had a verbal lease "understanding" made in 1981. The agreement was Mortensen would pay $100 rent per week to the Remschners, who would let him their restaurant facility and equipment for Mortensen's business. Mortensen was to supply the food, cook, and run the business. He kept all profits. Although live-

stock sales were held in the building only once a week, Mortensen's Steer Inn was open six days a week, serving people coming from town "not involved in the cattle industry."

When Mortensen and the Remschners were discussing rent, utilities, and other aspects of their agreement, Mortensen asked them about insurance coverage. He testified Mrs. Remschner told him they had a "blanket policy" with their agent on the whole building, and Mortensen, therefore, would not need to procure workers' compensation insurance himself. Apparently, Mortensen had doubts about the arrangement because he began discussing workers' compensation insurance with the Remschners' insurance agent shortly after the restaurant opened and again discussed it about a week before Worker's accident. It was not until after the accident, however, that Mortensen finally did obtain compensation insurance for his business.

Mortensen testified the Remschners hired three workers before he began business, but he hired the rest, including Cora Rice. Mortensen testified he had the power, nevertheless, to fire any workers the Remschners hired.

The Remschners' involvement with the Steer Inn was minimal. Mr. Remschner would occasionally notify Mortensen when a sale was to hold over late on a particular night, suggesting the waitresses be told to plan to stay longer. In addition, one time Mrs. Remschner suggested Mortensen fire an employee originally hired by her, and he honored her request.

## LAW

### I

The issue before us is whether Remschner and Worker had an employer-employee relationship within the meaning of the workers' compensation statutes. We agree with trial court and court en banc that they did not.

It is well settled that when the existence of the employer-employee relationship is an issue before the compensation court, a jurisdictional question is presented. On review, therefore, the Oklahoma Supreme Court will not accept findings of the compensation court as conclusive, but will weigh the evidence and independently evaluate the law and facts to determine the existence or absence of that relationship. *Beall v. Altus Public School District,* 632 P.2d 400 (Okla.1981).

■ Although Worker urges us to find she shared an employer-employee relationship with Remschner, her own testimony shows she had no contact with the Remschners. She was interviewed, hired, supervised, and paid by Mortensen d/b/a Steer Inn. She received no wages from the Remschners. None of the evidence before us sustains the existence of an express or implied contract for hire between Worker and Remschner. The supreme court also stated in *Beall:*

> Since a contract for hire is an essential element to the creation of an employer-employee relationship, it follows that in the absence of such contract, the Workmen's Compensation Act is not applicable.

The decisive test for determination of whether an employer-employee relationship exists is whether the employer retains a right to control and supervise the work. *Clark v. First Baptist Church,* 570 P.2d 327 (Okla.1977). We find the clear weight of the evidence will not support a finding that Remschner retained such a right to control and supervise Worker's job performance. Worker's testimony, as well as Mortensen's, indicates Worker had no contact with Remschner. Mortensen was her boss. The record contains no contradictory testimony from the Remschners.

Although the compensation statutes are to be construed liberally in favor of those entitled to the benefits, a claimant must first be held to strict proof that he belongs to a class provided for by the Workers' Compensation Act. *Kelley v. Risenhoover,* 470 P.2d 334 (Okla.1970). Worker's evidence does not satisfy this standard.

## II

■ Finally, Worker would have this court determine, in the event we find no employer-employee relationship, that Remschner is secondarily liable for Worker's claim under 85 O.S.1981 § 11, because Mortensen is allegedly an independent contractor for Remschner. We decline Worker's invitation to so hold. The clear weight of the evidence before us will not support such a classification of the relationship between Remschner and Mortensen, which appears instead to be one of lessor-lessee. None of the testimony indicated Remschner had any authority over Mortensen other than that of a lessor. The fact that he occasionally informed Mortensen of an opportunity to do additional business by staying open late, which would also benefit Remschner's livestock customers and Remschner himself, did not make Mortensen his independent contractor. Mortensen, who kept all his profits, was paid no wages by Remschner, but instead was required to pay Remschner a flat weekly rent.

### CONCLUSION

We hold the clear weight of the evidence before us will not support a finding of an employer-employee relationship between Worker and Remschner nor a finding that Mortensen was Remschner's independent contractor. Accordingly, court en banc and trial court made the proper order, and we affirm.

AFFIRMED.

BRIGHTMIRE and STUBBLEFIELD, JJ., concur.