1998 OK 114

**Robert HENSON, Petitioner,**

v.

**HOW FOUNDATION–STATE INSUR-ANCE FUND, and HOW Foundation–Own Risk, and Bob Jenkins, and Select Home Sites–State Insurance Fund, and the Workers' Compensation Court, Respondents.**

**No. 90650.**

Supreme Court of Oklahoma.

Nov. 24, 1998.

Gus Farrar, Farrar & Farrar, Tulsa Oklahoma, for Petitioner.

Kevin D. Berry, Andrew D. Downing, Rhodes Hieronymus, Jones, Tucker & Gable, Tulsa, Oklahoma for Respondent, HOW Foundation, and the State Insurance Fund.

Shelly L. Dalrymple, Doerner, Saunders, Daniel & Anderson, Tulsa, Oklahoma, for Respondent, HOW Foundation, Own risk.

Lawrence D. Taylor, for Respondent, Bob Jenkins; James B. Durant, Pierce, Couch,

Hendrickson, Baysinger & Green, Tulsa, Oklahoma, for Respondents, Select Home Sites and the State Insurance Fund.

WATT, Justice:

¶1 Respondent, Bob Jenkins, seeks certiorari to review an opinion of the Court of Civil Appeals, Division 4. Jenkins claims that Petitioner, Robert Henson, was not an "employee" as that term is defined by Subdivision 6 of 85 O.S. Supp.1997 § 3.[1] for the reasons set forth in the balance of this opinion we hold that Henson was not Jenkins' employee under the Workers' Compensation Act.

## FACTS

¶2 Respondent, HOW Foundation is a nonprofit organization, which offers alcohol and drug rehabilitative services in the Tulsa area. In November 1996 Henson was receiving treatment for alcohol abuse from HOW. Henson, and others receiving treatment from HOW lived in a group setting in quarters furnished by HOW in Tulsa.

¶3 In addition to living facilities, HOW's treatment program consisted of counseling, regular meals, and regular work. The program was designed to last six-months. Some of the work done by participants in the HOW program was performed directly for HOW, using tools owned by HOW, and under the supervision of HOW's employees.

¶4 In addition to the work performed under HOW's direct supervision, participants in HOW's program performed work for HOW's "customers." Customers paid HOW $6.00 per hour for a worker furnished by HOW. Jenkins was one of HOW's customers and Henson was working for Jenkins on the

day of Henson's claimed accident, November 22, 1996. The work Henson did for Jenkins was part of HOW's rehabilitation program.

¶5 Henson had been in the HOW program since August 8, 1996, and had worked for Jenkins during most of that time. Jenkins was an independent contractor. He owned two trucks and two tractors. On the day of his claimed injury Henson was working under Jenkins' exclusive supervision.

¶6 Jenkins was working for Respondent, Select Home Sites, Inc. Select Home Sites had hired Jenkins to clean streets in Bristol Park, a housing subdivision it was developing in Tulsa. Select Home Sites provided a 2,000 gallon tank truck for Jenkins' use in cleaning the streets. Jenkins directed Henson, and another HOW participant, Mitch Fortner, who was also working for Jenkins that day, to fill the tank truck with water from a fire hydrant. Jenkins was working elsewhere in the subdivision when Henson's claimed accident took place.

¶7 Henson and Fortner testified that Henson was standing atop the tank truck holding a fire hose in the tank, which was attached to a fire hydrant. According to Henson and Fortner, the force of the water caused the hose to get away from Henson and knock him from the truck. Fortner testified that he had opened the hydrant and was standing on the ground next to it when the force of the water knocked Henson to the ground. Because of the Workers' Compensation Court's determination that it lacked jurisdiction to consider Henson's claim, and because we find no error in that determination, we need not consider the evidence of Henson's claimed injury. We do note, however, that Respondents' evidence concerning

---

1. Subdivision 6, 85 O.S. Supp.1997 § 3 provides in material part:

"Employee" means any person engaged in the employment of any person, firm, limited liability company or corporation covered by the terms of the Workers' Compensation Act.... Provided, "employee" shall not include any other person providing or performing voluntary service who receives no wages for the services other than meals, drug or alcohol rehabilitative therapy, transportation, lodging or reimbursement for incidental expenses.

The exclusion of persons receiving treatment for drug or alcohol problems was first passed into law in 1994 as Subdivision 4, 85 O.S. Supp. 1994 § 3. As a result of other amendments to § 3, the drug and alcohol treatment exception was renumbered from Subdivision 4 to Subdivision 6 in 1997. The language of the provision relevant to this appeal, however is the same in the current version of the statute, last amended in 1997, as it was when first passed in 1994. We will, therefore, refer to the drug and alcohol exclusion by its current designation, Subdivision 6, 85 O.S. Supp.1997 § 3.

Henson's claimed accident was dramatically contrary to Henson's proof on the issue.[2]

## DISCUSSION

### I. *There was no employer-employee relationship between Jenkins and Henson.*

¶ 8  Henson concedes that he was not HOW's employee as that term is defined by Subdivision 6, 85 O.S. Supp.1997 § 3. Nevertheless, he claims that an employer-employee relationship existed between Jenkins and Henson sufficient to bring Henson's claimed accidental injury within the Workers' Compensation Act. We Disagree.

¶ 9  Henson candidly admits that before one could be entitled to workers' compensation benefits under the Workers' Compensation Act the contract of employment "must be to labor for agreed 'wages,' as that term is defined in that law." *Beall v. Altus Public School. Dist.*, 1981 OK 93 ¶ 9, 632 P.2d 400. In *Beall*, we affirmed the Workers' Compensation Court, which had held that Beall's injury was not compensable because he was a high school student working on a school carpentry project when he was injured. We held that because Beall was not receiving "wages" his injury was not compensable.

¶ 10  In seeking to distinguish *Beall*, Henson claims that the $6.00 per hour paid by Jenkins to HOW for Henson's services made Henson a "loaned servant" and gave the Workers' Compensation Court jurisdiction over his claimed accidental injury. Henson relies on *Crutchfield v. Melton*, 1954 OK 148, 270 P.2d 642. *Crutchfield*, however, does not apply here. There we noted that the decedent, Melton, whose widow was seeking workers' compensation benefits as a result of Melton's death, "was in the general employee of D.C. Evans," who had loaned Melton to Crutchfield. It was thus undisputed that Melton was paid wages by Evans. Henson also suggests that because Evans was a rancher, he would have been exempt from workers' compensation coverage. This was

not an issue in *Crutchfield*, as Henson concedes.

¶ 11  The case at bar differs in several important respects from those present in *Crutchfield*. Here it is undisputed that (1) HOW paid Henson no wages, (2) the money Jenkins paid to HOW served to reimburse HOW for the expense it had incurred in maintaining Henson in its rehabilitation program, (3) none of the money that HOW received from Jenkins was paid to Henson, and (4) Henson was expressly not an "employee" of HOW within the meaning of the Workers' Compensation Act under Subdivision 6, 85 O.S. Supp.1977 § 3. (Note 1.)

¶ 12  Henson also relies on *Ishmael v. Henderson*, 1955 OK 200, 286 P.2d 265. *Ishmael*, however, does not support Henson's claim that he was a loaned servant and was covered by the Workers' Compensation Act while he was working for Jenkins. The injured worker, Henderson, was hired by Ishmael, and Ishmael loaned Henderson to Mid–Continent Petroleum. It was undisputed that Ishmael paid wages to Henderson. Here, however, it is undisputed that HOW did not pay wages to Henson, and Henson received none of the $6.00 per hour paid by Jenkins for Henson's services. Those amounts were reimbursement to HOW for its expenses, not wages for Henson. *Ishmael* does not support Henson's claim that Henson was covered by the Workers' Compensation Act while he was working for Jenkins as part of his rehabilitation, although he was expressly excluded from such coverage by § 3 of the Act.

### II. *Subdivision 6, 85 O.S. Supp.1997 § 3 precludes Henson from qualifying as an employee of Jenkins.*

¶ 13  Henson claims that the exclusion used in Subdivision 6, 85 O.S. Supp.1997 § 3 to the effect that " 'employee' shall not include any other person providing or performing voluntary service who receives no wages for the service other than meals, drug,

---

2.  Two independent contractors who were working in the Bristol Park addition on the date of Henson's claimed accident, Chris Shunk and Terry Roskam, testified that they saw "two men" talking near the water truck. Shunk and Roskam testified that one of the men then lay down

in the street next to the truck and the other ran and got Jenkins. Shunk, Roskam, and Jenkins all testified that the fire hydrant was closed at all times while Henson was laying in the street and the area surrounding the truck, including the street where Henson was laying, was dry.

or alcohol rehabilitative therapy ..." limits its application to any other person who does not otherwise qualify as an employee. Thus, argues Henson, the Legislature did not intend for the foregoing clause to eliminate from coverage under the Workers' Compensation Act any person who would be covered otherwise. We find this argument unpersuasive.

¶ 14 Clearly, Henson was not an employee of Jenkins because Henson was not an employee of HOW. Henson has cited to no case, and we have found none, in which a worker who does work for no wages becomes an employee because a third party is paid for the worker's services. This conclusion is buttressed, not weakened, by the unambiguous exclusion from Workers' Compensation Act coverage of persons such as Henson who work in return for "drug or alcohol rehabilitative therapy."

¶ 15 There is another reason why we must reject Henson's argument that Subdivision 6, 85 O.S. Supp.1997 § 3 did not apply to him while he was working for Jenkins. It is clear that a major portion of the rehabilitation services performed by HOW are done while HOW customers, such as Henson, are working under the exclusive supervision of third parties, such as Jenkins.

¶ 16 To hold that services performed by one in a alcohol rehabilitative program were not covered by the exclusion in Subdivision 6, 85 O.S. Supp.1997 § 3 simply because they are for the benefit of and being supervised by a third party would subvert the clear intention of the Legislature. The unambiguous language of the exclusion shows that the Legislature intended all work done by those in drug or alcohol treatment programs for which they are not paid wages to be excluded from coverage under the Workers' Compensation Act, regardless of whether the work was done directly for the service provider or for a third party "customer." This unambiguous language is not susceptible of the interpretation urged by Henson.

III. *The Workers' Compensation Court's reliance on Murray State College v. Akins, 1990 OK CIV APP 63, 794 P.2d 1218, was appropriate.*

¶ 17 In its order holding that the Workers' Compensation Court lacked jurisdiction over Henson's claimed accidental injury, the trial court cited and relied upon *Murray State College v. Akins,* 1990 OK CIV APP 63, 794 P.2d 1218. In *Akins,* the Court of Civil Appeals held that a claimant who was injured while working under the federal Domestic Volunteer Service Act, also known as the Foster Grandparent Program, 42 U.S.C. §§ 5011 et seq., was not covered by the Workers' Compensation Act. The Foster Grandparent Act expressly provides that the stipend received by participants in the Program are not compensation for the purpose of state workers' compensation acts.

¶ 18 Henson seeks to distinguish *Akins* on the ground that there was no contention that Akins was a loaned servant. We believe the lack of such a contention in *Akins* was immaterial. The issue that the Court of Civil Appeals resolved was that the payments made to Akins were not wages as that term is used in the Workers' Compensation Act. Therefore, Akins could not qualify for coverage under the Act. Further, the court observed, "To allow Claimant to receive workers' compensation benefits would conflict with the objective of Congress of preventing stipends and other non-wage reimbursements or benefits from being considered wages or compensation for the purpose of establishing coverage under state workers' compensation laws."

¶ 19 Subdivision 6, 85 O.S. Supp.1997 § 3 constrains us here for the same reason the *Akins* court was constrained under the Foster Grandparent Act: the clear intent of the Legislature is contrary to an interpretation that would allow workers' compensation benefits to one who is working in a legislatively created program that is expressly excluded from the ambit of the Workers' Compensation Act. As noted earlier, Henson received no wages for his work, instead he received alcohol rehabilitative services. Subdivision 6, 85 O.S. Supp.1997 § 3 clearly exempts the work Henson did from coverage under the Workers' Compensation Act. That the work was performed for a third party who had arranged for Henson's work through HOW does not change the result. For the forego-

ing reasons, we agree with the analysis of the *Akins* court, and find it applicable to our analysis of the case at bar.

CERTIORARI PREVIOUSLY GRANTED, COURT OF CIVIL APPEALS OPINION VACATED, ORDER OF THE WORKERS' COMPENSATION COURT SUSTAINED.

KAUGER, C.J., HODGES, HARGRAVE, ALMA WILSON and WATT, JJ., concur.

SIMMS, J., concurs in result.

SUMMERS, V.C.J., concurs in part, dissents in part.

LAVENDER, J., dissents.

OPALA, J., dissents.

I dissent for the reason explained in *Beall v. Altus Public School Dist.*, 1981 OK 93, 632 P.2d 400, 403.