ADAMS et al. v. ADAMS et al.

No. 35049.　June 24, 1952.

Rehearing Denied April 28, 1953.

*256 P. 2d 458.*

Oris L. Barney, Anadarko, for plaintiffs in error.

Sparks & Boatman, Woodward, for defendants in error.

PER CURIAM. For convenience, the parties will be referred to as they appear in the trial court. This is an action by the plaintiffs against the defendants whereby the plaintiffs attempt to impress a trust upon a tract of land in Dewey county, Oklahoma. The facts disclosed by the findings of the district court show that in 1916 and 1917 Jacob E. Adams became the owner of the land involved by patents from the United States. In 1925 Jacob E. Adams and wife executed and delivered to the Federal Land Bank their note secured by mortgage on the land for the sum of $2,300; in 1936 the Federal Land Bank instituted foreclosure of the mortgage and judgment was rendered on June 1, 1936, finding that Jacob E. Adams and wife were indebted to the Federal Land Bank on said note and mortgage in the sum of $3,025.67 and order of sale was issued out of said court on December 14, 1936. The property was advertised to be sold on January 19, 1937. Jacob E. Adams made several unsuccessful attempts to procure money with which to pay this obligation. Jacob E. Adams and his wife were about 70 years of age and in very necessitous circumstances. While the land was being advertised for sale a deed was executed by Jacob E. Adams and wife, conveying the land to the Federal Land Bank. Thereafter the sale was withdrawn, the mortgage held by the Land Bank and the judgment obtained thereon were released. On January 27, 1937, the Federal Land Bank entered into a contract for the sale of this land to T. M. Adams, of Cullison, Kansas, a brother of Jacob E. Adams, for a consideration of $3,143.07 which was to be paid as follows: $643.07 cash, and 10 annual installments of $250 each, the first payment being due and payable August 1, 1937. The contract further specified, "Time is the essence of this agreement". Jacob E. Adams and his wife continued to reside on the land. An oral agreement existed between T. M. Adams and his brother Jacob E. Adams to the effect that if Jacob E. Adams would pay the sum specified in the agreement between T. M. Adams and the Federal Land Bank, according to the terms thereof, plus the sum of $435 previously loaned to him by T. M. Adams, upon completion of the payments by Jacob E. Adams, T. M. Adams would convey the land to Jacob E. Adams. The record disclosed that Jacob E. Adams doubtless paid the installments due August 1, 1938, in the sum of $306.25 and installment due August 1, 1939, in the sum of $300. A further payment of $37.50 is indicated on January 18, 1941. However, he did not repay the old loan nor the initial

cash payment to T. M. Adams. The record indicates that the remainder of the payments including taxes were paid by T. M. Adams. The final payment was made on March 21, 1944. Thereafter, deed was executed by the Federal Land Bank conveying said real estate to T. M. Adams. On August 21, 1940, the Federal Land Bank wrote T. M. Adams concerning delinquent items and stated, "as the contract is now subject to cancellation, this should be attended to at once." T. M. Adams promptly remitted the amount due and inquired of the bank about a long term loan. Thereafter T. M. Adams visited the home of Jacob E. Adams and conversation was had as to the failure of Jacob E. Adams to make the payments as provided in the contract with the Federal Land Bank. T. M. Adams threatened to rent the cultivated portions of the farm to other parties, but after much insistence by Jacob E. Adams, T. M. Adams finally agreed to give him one more year. In 1941 T. M. Adams informed J. E. Adams that he "carried this as long as he could"; that he had given him several years to pay off the interest, taxes, and installments on principal and T. M. Adams thereupon rented the tillable land to another brother, Ben Adams, and the son of Ben Adams, Clifford Adams, in the fall of 1941. They operated this portion of the land, paying the rent to T. M. Adams. J. E. Adams and wife continued to live in the house and use the pasture until Jacob's death in 1946, at which time the widow moved away from the farm to another section of the state. She commenced this action in 1948 on behalf of herself and as guardian of her son, Ernest Felix Adams, an incompetent person, against T. M. Adams, who subsequently departed this life and the case was revived against his widow and children.

The record reveals that the testimony of the witnesses who heard conversations between T. M. Adams and Jacob E. Adams just prior to, at the time of, and after the making of the arrangement between them, is not in sharp conflict. There is testimony more than sufficient to sustain the trial court's finding that the agreement in its finality, "was that if Jacob E. Adams would pay the sum specified in the agreement between the Federal Land Bank and T. M. Adams, according to the terms of the agreement between the Federal Land Bank and T. M. Adams, that if Jacob E. Adams would perform those terms, make those payments according to the terms of their agreement, that upon completion of those payments by Jacob E. Adams, upon completion thereof, T. M. Adams would convey that land to Jacob E. Adams. Now it ought to be observed in this case and in this matter Jacob E. Adams had never assumed any of the contractual obligations which would be enforceable * * *."

The record contains several letters written by T. M. Adams after the original arrangement was made. Some of these letters are susceptible of more than one construction and the letters are not wholly consistent in themselves. These letters were considered by the trial court along with the oral testimony, and in view of the entire record we cannot say that the findings of the trial court are contrary to the weight of the evidence.

The decisions uniformly hold that to impress a property with a constructive or resulting trust there must be fraud, violation of confidence, or of fiduciary relation, or acquisition of title in some other unconscionable manner. A detailed search of the record fails to show any such elements in this case.

An early case Hayden v. Dannenberg, 42 Okla. 776, 143 P. 859, Ann. Cas. 1916D, 1191, holds:

"A constructive trust may be established by parol evidence, but the law for the safety of titles requires that the proof should be of the most satisfactory and trustworthy kind."

This is repeated in a large number of cases involving constructive trusts, including Parsons v. Crawford, 193 Okla. 537, 145 P. 2d 932, in which the

above syllabus is quoted and there is added:

"The evidence must be clear, unequivocal, and decisive."

With respect to a resulting trust it was held by the Supreme Court of the United States, in Ducie v. Ford, 138 U. S. 587, 11 S. Ct. 417, 34 L. Ed. 1091, as follows:

"While there is no doubt of the general proposition that a trust results to him who pays the consideration for an estate, where the title is taken in the name of another; that such trust, is not within the statute, and that parol evidence is admissible to show whose money is actually paid for the property,—it is equally clear that the trust must have arisen at the time the purchase was made, and that the whole consideration must have been paid or secured at the time of or prior to such purchase."

This case also holds in the syllabus:

"In order to make surrender of possession to the defendant a sufficient performance to take a case out of the statute of frauds such surrender must be made in pursuance of the contract, and be referrable to it; it must be a new possession under the contract, and not merely the continuance of a former possession claimed under a different right or title. * * *"

This court has likewise held with respect to resulting trusts in the case of Birdwell v. Estes, 189 Okla. 379, 116 P. 2d 969.

The plaintiffs have wholly failed to show by clear and decisive proof which the law demands, that the consideration for this land was paid by Jacob E. Adams. There is no question that the deed to the Federal Land Bank was executed by Jacob E. Adams and wife after a thorough and clear understanding between them and T. M. Adams, and that it was a valid conveyance. The contract between the Federal Land Bank and T. M. Adams was also free from any ambiguity, fraud, and uncertainty and provided that all payments due for taxes, interest and principal must be made on the due date and time is the essence of the contract.

The oral assignment or option, as the finding of the trial court described the arrangement, falls squarely within the decision of Abraham v. McSoud, 188 Okla. 409, 109 P. 2d 822:

"An express trust" oral in form, "to hold and to convey real property, is unenforceable as being in violation of the statute of frauds and the statute of uses and trust. . ."

Another case involving a similar situation is Oliphant v. Rogers, 186 Okla. 70, 95 P. 2d 887.

The plaintiffs in error argue for a constructive trust on the basis of unjust enrichment, but could there be unjust enrichment in this case? The evidence shows loans from T. M. Adams prior to the inception of this transaction of $435 purchase of seed wheat in 1936 amounting to $115, cash payment for the purchase of the land sale contract, $643.07, and payment of funeral expenses of Jacob E. Adams. Jacob E. Adams occupied the premises from 1937 to the date of his death without the payment of any other sums as rental or otherwise for the use of said premises, and from 1941 to the date of his death he had the use of the house and pasture without making any payments of any nature. From this it would appear that T. M. Adams had dealt generously with his brother.

This is a case of equitable cognizance and is governed by equitable principles. In Renegar v. Bruning, 190 Okla. 340, 123 P. 2d 686, it was said:

"In cases of equitable cognizance the judgment of the appellate court should not lightly displace the judgment of the trial court, which had the advantage of observing the witnesses on the stand."

In the recent case of Hill v. Hill, 202 Okla. 483, 215 P. 2d 553, this court said:

"In an action of equitable cognizance where the evidence is conflicting the findings thereon of the trial court will not be disturbed unless clearly against the weight thereof.

We have reviewed the entire record and considered all of the evidence in the light of the interpretations put thereon by the parties and the trial court, and also the briefs of the parties, and it is difficult to understand how the trial court could have reached a different conclusion.

The judgment of the trial court is therefore affirmed.

This Court acknowledges the services of Attorneys A. J. Kriete, Philip R. Rimbish, and Marvin T. Johnson, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the court.

HALLEY, V.C.J., and CORN, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur. WELCH and DAVISON JJ., concur in results. ARNOLD, C.J., dissents.