**UNITED STATES of America to the USE of C. C. WILSON, Trustee for Midwestern Steel Building Co., Inc., Plaintiff,**

v.

**COLUMBIA ERECTION CORPORATION et al., Defendants.**

No. 9391.

United States District Court
W. D. Missouri, W. D.

Oct. 3, 1955.

Rufus Burrus, Independence, Mo., for plaintiff.

Frank E. Tyler of Dietrich, Tyler & Davis, Kansas City, Mo., for defendants.

WHITTAKER, District Judge.

I deal now with plaintiff's motion to dismiss the counterclaim, in three counts, of defendant, Luria Engineering Company. It appears that prior to the institution of this suit on October 9, 1954, Midwestern Steel Building Co., Inc. had been adjudged a bankrupt by the United States District Court for the Western District of Oklahoma, in its numbered cause 9009, and that plaintiff, Wilson, was elected and has qualified, as Trustee of the bankrupt's estate, and, as such trustee in bankruptcy, he brought this plenary suit in this court against defendant, Luria, and others to recover the sum of $8,353.55, claimed to be owing the bankrupt on a construction contract.

Defendant, Luria, has filed its first amended answer and counterclaim to plaintiff's first amended complaint. The counterclaim is in three counts. The first count is upon an account that accrued on May 29, 1953 against Midwestern in favor of J. A. Adams, doing business as Standard Roofing Company, in the amount of $2,006.17, which account was purchased by, and assigned to, defendant, Luria, on February 23, 1955. The second count is upon an account that accrued between June 20 and July 13, 1953, in favor of Havens Structural Steel Company against Midwestern in the amount of $484.36, which was purchased by, and assigned to, defendant, Luria, on February 16, 1955, and the third count is upon an account that accrued between April 20 and May 11, 1953 in favor of Clyde M. Wallace, doing business as Commercial Cartage Company, against Midwestern in the amount of $456.85, which was purchased by, and assigned to, defendant, Luria, on January 13, 1955. The original assignment, in each instance, is attached to the counterclaim and each recites that Midwestern is in bankruptcy in the Oklahoma Federal Court and that the assignee has "filed or will file a proof of claim as above set out in the said bankruptcy" and will do all things requested by Luria "reasonably required for the proving of said debt in the bankruptcy proceeding," thus showing, conclusively, that defendant, Luria, knew that Midwestern had been adjudicated a bankrupt at the time it acquired these accounts. Defendant, Luria, asks judgment upon each of the three counts of its counterclaim—

that they may be offset against any claim that plaintiff may be able to establish under his complaint.

Plaintiff has moved to dismiss the counterclaims upon the specific grounds that they were purchased and acquired by defendant, Luria, after the adjudication of Midwestern as a bankrupt, and that exclusive jurisdiction for the allowance and classification of those claims is in the bankruptcy court in Oklahoma.

While I am aware that one sued, in a plenary action, by a trustee in bankruptcy, may plead in setoff against the plaintiff's claim, any mutual claim that has accrued to him, in normal course of business, against the bankrupt at the time of adjudication, even though action on that claim be barred by limitations, or the time within which the claim might be proved against the bankrupt in the bankruptcy court had expired, as held in Zorwitz v. Okin, D.C., 121 F.Supp. 56, upon which defendant, Luria, here relies, that principle is but an application of the general rule that a barred claim may be set up defensively in offset against a suit, even though the barred claim could not be permitted to constitute the basis of an affirmative action.

However, it would not do to permit a debtor of a bankrupt to buy, from third parties, claims against the bankrupt after the latter's adjudication and then use them as offsets when sued by the trustee in bankruptcy, for that would be to prefer those purchased claims against the bankrupt by affording them full payment as offsets against, and in reduction or extinguishment of, the trustee's claim, to the detriment of all other creditors of the bankrupt; and, no doubt, it was with this in mind that Congress passed Section 68, sub. b of the Bankruptcy Act, now Section 108, sub. b, Title 11 U.S.C.A. providing that a setoff or counterclaim shall not be allowed in favor of any debtor of the bankrupt which "(2) was purchased by or transferred to him after the filing of the petition or within four months before such filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy."

The courts, in dealing with the question, have found this language and its purpose to be plain and have enforced it as written. In Becker v. Crabb's Trustee, 231 Ky. 354, 21 S.W.2d 438, a debtor had purchased claims against the bankrupt after a petition in bankruptcy had been filed, just as defendant, Luria, did here, and then sought to use those claims as setoffs in the plenary suit brought against it by the Trustee. The Court held this could not be done, saying "the debtor of a bankrupt may not, after the adjudication in bankruptcy * * * acquire such claims to offset a debt that may be due the bankrupt", and after referring to Section 68, sub. b of the Bankruptcy Act, now Section 108, Title 11 U.S.C.A., said "The main object of section 68b of the act is to prevent debtors of the bankrupt from acquiring claims against him for use by way of set-off and reduction of their indebtedness to the bankrupt's estate." Again, in Lowenthal v. Block, 175 Misc. 472, 22 N.Y.S.2d 736, 737, the court announced the same principle, saying: "Obviously one cannot reduce one's own indebtedness to a bankrupt by buying up the claims of creditors of the bankrupt and interposing them to his own debt." These principles and the reasons for them are discussed in 4 Collier on Bankruptcy, Section 68.12, page 750.

Here, it conclusively appears that defendant, Luria, purchased, and received assignment of, the three claims, upon which its offsetting claims are based, after the adjudication of Midwestern as a bankrupt, and, therefore, under the law, above pointed out, it may not use them as offsetting counterclaims in this plenary suit against it by Midwestern's trustee in bankruptcy, and, it follows, that plaintiff's motion to dismiss defendant, Luria's counterclaim of three counts must be, and it is hereby, sustained, and those counterclaims are dismissed, but without prejudice.