## SOUTHEASTERN OKLAHOMA DEVELOPMENT AND GAS AUTHORITY, Appellant,

v.

## The OKLAHOMA CORPORATION COMMISSION and the State of Oklahoma, Appellees.

No. 51134.

Supreme Court of Oklahoma.

Feb. 5, 1980.

---

Gary F. Duckworth, Oklahoma City, for appellant.

Cody B. Waddell, Gen. Counsel, Corp. Commission, Oklahoma City, for appellees.

IRWIN, Vice Chief Justice.

The Southeastern Oklahoma Development and Gas Authority (Trust), a public trust, was formed in 1968 pursuant to 60 O.S.1961, § 176. The State of Oklahoma is its beneficiary. The purpose of the trust, inter alia, was to supply natural gas service in various counties in southeastern Oklaho-

ma. The cost in acquiring, improving and constructing the gas system now operated by Trust was approximately $1,160,000.00 for which revenue bonds were issued by Trust.

The 1975 Legislature conferred in the State Corporation Commission (Commission) "rate-making authority and general jurisdiction over all supply systems of natural gas, steam heat and steam serving the general public notwithstanding operation thereof by a trust . . ." 17 O.S.1975 Supp., §§ 160.1–160.2. Exceptions were contained in the enactment which are not applicable. Under § 160.2 all trusts under the act were required to submit information showing "the rate being charged, along with a complete financial report." Pursuant to a request by the Commission, Trust filed an application for approval of its present rates. After hearing, the Commission refused to approve Trust's present rates and ordered the rates be reduced to the level prior to the increase. Trust appeals.

■■■ Trust first contends that the 1975 Legislative enactment conferring jurisdiction in the Commission to fix and establish rates is unconstitutional as the same applies to it. Trust argues that at the time it was formed in 1968, it was "an agency of the State" and as such was not subject to the jurisdiction of the Commission as determined in *Oklahoma County Utility Services Authority v. Corporation Commission*, Okl., 478 P.2d 352 (1970). Trust's argument is that at the time the trust was formed in 1968 and the bonds were issued, the Commission did not have jurisdiction to set rates for a public utility operated by a "public trust;" Trust and its bond holders had the right to assume the Trust could charge such rates as would enable it to pay the bonded indebtedness and all necessary expenses; and the 1975 enactment purporting to confer jurisdiction in the Commission to fix and establish its rates constitutes a law impairing the obligation of contracts prohibited by Article 2, § 15, Okl.Const., and Article 1, § 10 of the United States Constitution, as the same applies to it.

Trust's "impairment of contract" argument is premised upon its contention that the trust indenture combined with this court's decision in *Oklahoma County Utility Services Authority, supra*, precluded the Legislature from placing it under the regulatory jurisdiction of the Corporation Commission.

In *Oklahoma County Utility Services Authority, supra*, the court did not hold that the Legislature could not constitutionally confer jurisdiction in the Corporation Commission over a public trust engaged in furnishing water utility services to its beneficiaries, but that the Legislature had not conferred such jurisdiction. The court did say that "The Legislature is authorized to expand the jurisdiction of the Corporation Commission. Art. 9, § 19, Oklahoma Constitution." In the case at bar the Legislature has conferred jurisdiction. Trust's argument that the Corporation Commission did not have jurisdiction over it can not be sustained.

In *City of Pawhuska v. Pawhuska Oil & Gas Co.*, 64 Okl. 214, 216, 166 P. 1058 (1917), it was argued that the Legislature could not constitutionally confer upon the Corporation Commission the power to regulate a public utility where the rates of utility had been fixed by the municipality served. In rejecting that argument we said:

"The power to regulate the charges for public services by municipal corporations is the power which it was the intention of the framers of the Constitution should be exercised by the sovereign power only. Such power is inherent in the state, and is a necessary attribute of sovereignty. No specific authority having been conferred by the Constitution upon cities to fix and regulate the charges for gas in municipalities, the Legislature had the right to legislate thereon whenever in its judgment the public interest required such action. The power delegated to the city of Pawhuska to regulate charges for light and gas under section 593, Rev. Laws Okl. 1910 was such a grant of power as could be taken away from said city by the Legislature and conferred upon the Cor-

poration Commission as was done by chapter 93, Session Laws 1913."

In *Home Building & Loan Association v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, the Supreme Court of the United States said:

"Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order. The policy of protecting contracts against impairment presupposes the maintenance of a government by which contractual relations are worth while,—a government which retains adequate authority to secure the peace and good order of society."

In *Board of Regents v. Updegraff*, 205 Okl. 301, 237 P.2d 131 (1951), we quoted with approval the following:

"All parties dealing with a sovereign power, or one of its functionaries, in the exercise of governmental power, the subject of which pertains to government * * *, do so knowing it cannot contract * * * the power conferred for self-protection or self-preservation. The rule, therefore, that the Legislature can pass no law impairing the obligation of contracts does not apply to parties dealing with a department of government concerning the future exercise of powers conferred for public purposes by legislative acts, where the subject-matter of the contract is one which affects the safety and welfare of the public. In such cases 'the presumption is that, when such contracts are entered into, it is with the knowledge that parties cannot by making agreements on subjects involving the rights of the public, withdraw such subjects from the police power of the Legislature.' *Chicago, B. & O. R. v. [City of Omaha] Nebraska*, 170 U.S. [57] 72, 18 S.Ct. 513, 42 L.Ed. 948. *Board of Education of the City of Leavenworth v. Phillips*, 67 Kan. 549, 73 P. 97, 98.

To hold otherwise would be to subject the exercise of the police power inherently vested in a sovereign people to the will of contracting individuals. See *Boston Beer Co. v. Mass.*, 97 U.S. 25, 33, 24 L.Ed. 989."

Art. 18, § 7, Okl.Const., provides that the power to regulate charges for public service shall not be surrendered. Trust does not suggest that this Constitutional proviso could be construed so as to prohibit the Legislature from conferring jurisdiction in the Corporation Commission to regulate the public trust here involved.

We hold the Legislature could constitutionally confer jurisdiction in the Corporation Commission the rate making power and general jurisdiction over a public utility trust, and we also hold that the Legislative enactment did not constitute an impairment of contractual obligations.

 Trust contends the order of the Commission denying its rate increase is unsupported by the evidence. Trust argues the Commission was forced to follow the mandate of the indenture which required rates sufficient to satisfy the bonded indebtedness. Trust presented no evidence of the value of its physical assets or other traditional evidence of a rate base, and asserts that none is required. It contends the "rate base" must necessarily be the indebtedness. No authority is cited for this proposition other than that dealing with impairment of contracts. Neither the Trust nor bondholders had any right under the law at the time of the indenture to rely upon any purported divestment of legislative control over who shall set the rates. To require the Commission to follow the formula set out in the contract would be to give life to such a divestiture, contrary to the express intent of the Legislature in placing this utility under the jurisdiction of the Commission.

The trust did not attempt to show that the purchase price for the physical plant was reasonably related to its market value, nor did it justify various expenses which the evidence tended to establish to be unreasonable. In the absence of such evidence the Commission determined that there was insufficient evidence to allow it to determine a rate base and a fair rate of return under the procedure outlined in *Te-*

**578**

cumseh Gas System, Inc. v. State of Oklahoma, Okl., 537 P.2d 421 (1975). Accordingly, the Commission refused to approve the new rates and ordered the rates reduced to the level prior to the increase.

In reviewing Commission orders regulating public utilities, as in other Commission matters, this Court's review is limited to determining whether the order is sustained by law and supported by substantial evidence. *Tecumseh Gas System, Inc. v. State of Oklahoma*, Okl., 565 P.2d 356 (1977). In view of Trust's failure to produce any evidence of the rate base other than the indebtedness itself, and failure to justify the increase in rates, we cannot say that the Commission's order refusing to approve the rate increase is unsupported by the law and substantial evidence.

AFFIRMED.

All the Justices concur.