1997 OK 10

STATE of Oklahoma, ex rel., John P. CRAWFORD, Insurance Commissioner as Receiver for American Standard Life and Accident Insurance Company, Petitioner,

and

Oklahoma Life and Health Insurance Guaranty Association, Intervening Petitioner, Appellees,

v.

The GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, Respondent, Appellant.

No. 84563.

Supreme Court of Oklahoma.

Feb. 3, 1998.

Joe Heaton, G.M. Fuller, Fuller, Tubb & Pomeroy, Oklahoma City, Oklahoma, Michael R. Hassan, Forrest B. Lammiman, Lord, Bissell & Brook, Chicago, Illinois, for Appellee Insurance Commissioner.

Michael D. Coleman, James W. Rhodes, J. Angela Ables, Kerr, Irvine, Rhodes & Ables, for Appellee Guaranty Association.

C. Wayne Litchfield, Oklahoma City, Oklahoma, Cecilia Kempler, John S. Kinzey, Jr., LeBoeuf, Lamb, Greene & MacRae, L.L.P., New York, New York, for Appellant.

Michael E. Surguine, National Association of Insurance Commissioners, Kansas City, Missouri, Amicus Curiae.

Marjorie McCullough, Jay M. Galt, White, Coffey, Galt & Fite, P.C., Oklahoma City, Oklahoma, Phillip E. Stano, American Council of Life Insurance, Washington D.C., Amicus Curiae.

Burck Bailey, John Joseph Snider, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, Oklahoma, Amicus Curiae, National Alliance of Life Companies.

Debra J. Hall, Reinsurance Association of America, Washington, D.C., Amicus Curiae.

Haven Tobias, Gerald P. Green, Pierce, Couch, Hendrickson, Baysinger & Green, Oklahoma City, Oklahoma, Amicus Curiae, The Kempton Group.

WATT, Justice,

## FACTS AND PROCEDURAL HISTORY

¶ 1 In 1986 Guardian Life Insurance Company and Life Insurance Company of Pennsylvania made a reinsurance agreement. American Standard Life Insurance Company acquired Life Insurance Company of Pennsylvania's rights and obligations under the Agreement in 1987. On November 1, 1988, an amendment to 36 O.S. § 1928, § 1928.B.4, became effective.[1] Prior to this amendment § 1928 mandated that the credits and debts between a failed insurance company and its reinsurer would be offset so that only the balance was owed. The 1988 amendment fundamentally changed the law and deprived such a reinsurer of the right to offset its debts against amounts owed to it by a failed insurer where the insurer's debt was the result of a reinsurance agreement that was "structured so as to avoid reasonable risk transfer and indemnification criteria." *Id.*

¶ 2 The Receiver sued Guardian on July 1, 1992 seeking a declaratory judgment that Guardian had no right to offset claims against premiums under its reinsurance agreement with American Standard Life, but was obligated to pay one-hundred percent of the claims thereunder, and could only collect premiums far later, if at all, as American Standard Life's general creditor. The litigation has continued to this day. Because of the narrow issue upon which our decision in this appeal turns, it is necessary to discuss in detail only a few of the many issues of fact and law presented below.

¶ 3 The parties agree that the purpose of § 1928.B.4 was to avoid granting a reinsurer a post-insolvency right to setoff where the true purpose of the reinsurance agreement had been to lend or rent surplus in order to allow an insurer to mask its financial weakness. The trial court found as a fact that Guardian's reinsurance agreement with American Standard Life was such a lending or renting of surplus, because the Agreement had been "structured to avoid reasonable risk transfer and indemnification criteria." *Id.* Thus, held the trial court, Guardian was not entitled to the benefit of the offset provision in its Agreement with American Standard Life. The trial court entered judgment against Guardian for $15,745,636.00, plus interest, and imposed a continuing obligation on Guardian to pay all benefits due on every life insurance policy it had agreed to reinsure, beginning with the date of the reinsurance agreement, January 28, 1986.

¶ 4 The Oklahoma Life and Health Insurance Guaranty Association intervened in the action because it guarantees payment of any claims on American Standard Life policies at issue here, if any, held by Oklahoma residents.

¶ 5 The trial court's factual finding that the Agreement was a lending and not a reinsurance transaction does not end the inquiry. We must first decide whether § 1928.B.4 can be given retroactive application. If it cannot, Guardian is entitled to prevail as a matter of law. It is undisputed that Guardian's Agreement with American Standard Life gave Guardian the right to offset, and that this right was created prior to the effective date of § 1928.B.4. Unless § 1928.B.4 can be applied retroactively Guardian is entitled to the fruits of its bargain with American Standard Life.

## ISSUE

■ ¶ 6 May § 1928.B.4 be applied retroactively so as to deprive Guardian of its contractual right of offset? We hold that it may not.

## DISCUSSION

¶ 7 The Legislature clearly had the power to enact § 1928.B.4 and thereby deprive a

---

1. 36 O.S. § 1928 provides in material part as follows:

    A. 1. In all cases of mutual debts or mutual credits between the insurer and another person in connection with any action or proceeding under this article, such credits and debts shall be offset and the balance only shall be allowed or paid, except as provided in subsection B of this section.

    ...

    B. No offset shall be allowed if:

    ...

    4. The obligation of the insurer was the result of a life or accident and health reinsurance agreement that contains terms or conditions structured to avoid reasonable risk transfer and indemnification criteria ...

reinsurer of its contractual right to offset *prospectively* where the reinsurance agreement did not truly transfer risk. The issue here though is whether § 1928.B.4 may be applied *retroactively* so as to deprive Guardian of its right to offset, which right Guardian had both under the Agreement and Oklahoma law prior to the passage of § 1928.B.4.

*Section 1928.B.4 Applies Prospectively Only*

■ ¶ 8 New legislation operates prospectively only "unless the Legislature clearly expresses a contrary intent. If doubt exists, it must be resolved against a retroactive effect." *Forest Oil Corp. v. Corporation Com'n of Oklahoma,* 1990 OK 58 ¶ 11, 807 P.2d 774, 781. There is no indication in the statutory language that the Legislature intended for the statute to apply retroactively. Indeed to have attempted to have the statute destroy vested rights such as Guardian's would have raised serious constitutional issues. *Unit Petroleum Company v. Oklahoma Water Resources Board,* 898 P.2d 1275 (Okla.1995).[2]

¶ 9 The Receiver and the Guaranty Association contend that the amendment to § 1928 was both proper and constitutional. The Receiver claims the transactions giving rise to the claims at issue here arose after the passage of § 1928.B.4 and the application of the statute is, therefore, not retroactive. This argument is unconvincing. The insurance policies upon which premiums were paid after § 1928.B.4 became effective were bought by their owners long before § 1928.-B.4's passage. Thus, Guardian's rights and obligations were fixed long before the Legislature passed § 1928.B.4. The mere fact that policy owners continued to pay premiums after the effective date of the act does not change the result.

■ ¶ 10 The Receiver claims that § 1928.B.4 was passed in response to a federal court decision, *Grimes v. Crown Life Insurance Company,* 857 F.2d 699 (10th Cir. 1988), which allowed a reinsurer to offset its obligation to pay claims against its right to receive premiums. While this may be so, it does not show that the Legislature intended

that the amended statute should apply retroactively.

¶ 11 The Guaranty Association argues that the statute was not applied retroactively because it could not be applied until after American Standard Life was placed in receivership, and Guardian's rights against American Standard Life and its rights against the Receiver as receiver of American Standard Life's insolvent estate are two different things. This argument fails for two reasons: First, it ignores that the effect of applying the statute would have been to rewrite Guardian's contract. Second, if the statute did not have retroactive application because it did not come into play until American Standard Life's insolvency it could never apply retroactively. This argument, once again, ignores the fact that Guardian's rights to setoff were based on a contract made long before the Legislature passed § 1928.B.4.

■ ¶ 12 Both the Receiver and the Guaranty Association argue that the statute *could be applied retroactively because it affected only Guardian's remedies.* If a statute affects only a remedy and not a substantive right it will be held to apply retroactively, *Forest Oil Corp.* 807 P.2d at 781, but this rule does not apply here because the effect of applying the statute would have been to rewrite Guardian's contract. Thus, Guardian's substantive rights would have been affected, not merely its remedies.

■ ¶ 13 In 1997 the Legislature clarified the 1988 amendment to the Guaranty Act upon which the Commissioner relies. The 1988 amendment to the Act, 36 O.S.1988 Supp. § 1928.B.4, prohibits enforcement of setoff rights in reinsurance agreements that were in fact loans. The 1997 amendment provides, "It is the intent of the Legislature that the provisions [of 36 O.S.1988 Supp. § 1928.B.4] shall only apply to life and accident and health reinsurance agreements *made and entered into after November 1, 1988.* [Emphasis added.] Guardian's contract was made in 1986, and American Standard became a party to it in 1987. As No-

---

**2.** We need not decide the issue of the constitutionality of applying the statute retroactively because we have found that the Legislature did not intend for it to be retroactively applied. Never-

theless, we observe that retroactive application of the statute would likely have been unconstitutional in the circumstances existing here.

vember 1, 1988 was the effective date of the 1988 amendment to the Act, it is obvious that the Legislature passed the 1997 amendment as a clarification of the 1988 statute. When a statute is passed to clarify an earlier statute it will be given retroactive effect, and when such an amendment occurs between the trial and the appellate decision "the reviewing court must apply the latest version of the law." *Texas County Irrigation and Water Resources Association v. Oklahoma Water Resources Board,* 1990 OK 121 ¶ 6, 803 P.2d 1119. It is thus clear that the Legislature intended the 1997 amendment to have retroactive effect.

¶ 14 The Receiver and the Guaranty Association also argue that Guardian's claim as a general creditor against American Standard Life's insolvent estate for a prorated portion of American Standard Life's premium income—payable only after deduction of expenses and pro rata payment to other general creditors—is the equivalent of Guardian's right to offset. This argument continues to overlook the fact that Guaranty's right to offset was expressly called for in its contract. Thus, the effect of applying the statute would be to substitute for Guardian's contractual right to setoff an entirely different right to make a claim as a general creditor. As noted earlier, the difference is substantive, not procedural.

¶ 15 The Receiver had a right to challenge the Agreement at any time after it was appointed Receiver for American Standard Life but it did not do so. Instead the Receiver insisted on enforcing Guardian's obligations to pay claims under the Agreement's terms, but avoiding American Standard Life's express obligation to seek from Guardian only the net difference between claims made and premium income. For the reasons stated above § 1928.B.4 gave the Receiver no such right. The trial court is instructed to enter judgment for Guardian and against the Receiver and the Guaranty Association.

¶ 16 CERTIORARI PREVIOUSLY GRANTED, COURT OF CIVIL APPEALS' OPINION VACATED, TRIAL COURT'S JUDGMENT REVERSED AND MATTER REMANDED WITH INSTRUCTIONS

¶ 17 SUMMERS, V.C.J., and LAVENDER, HARGRAVE and WATT, JJ., and JOHNSON and LANE, S.JJ., concur (in lieu of KAUGER, C.J., who recused and SIMMS, J., who disqualified).

¶ 18 HODGES, OPALA, and ALMA WILSON, JJ., dissent.

HODGES, J., with whom OPALA and WILSON, JJ., join, dissenting.

¶ 1 I dissent from this Court's opinion elevating Guardian Life Insurance Company of American (Guardian) to a position above other creditors. Before its amendment in 1988, section 1928(B) of title 36 of the Oklahoma Statutes allowed reinsurers a right to setoff. In 1988, the Oklahoma Legislature amended section 1928(B) to disallow a setoff to reinsurers who enter into contracts intended to mask from the Insurance Commissioner a precarious financial situation of an insurance company. This Court holds that the 1988 amendment should not be applied in the present case. It reasons that to do so would be a retroactive active application which would deprive Guardian of its contractual rights. Nonetheless, the Court relies on a 1997 amendment to support its position.

¶ 2 A statute is not applied retroactively merely because its application addresses antecedent facts. *Cox v. Hart,* 260 U.S. 427, 435, 43 S.Ct. 154, 157, 67 L.Ed. 332 (1922); *McAndrews v. Fleet Bank of Mass.,* 989 F.2d 13, 16 (1st Cir.1993). The United States Supreme Court set out the test for determining whether a statute's application is retrospective as follows:

> A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment.

*Landgraf v. USI Film Products,* 511 U.S. 244, 269, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229 (1994). "Whether a statute's application in a particular situation is prospective or retroactive depends upon whether the conduct that allegedly triggers the statute's application occurs before or after the law's effective date." *McAndrews,* 989 F.2d at 16.

¶ 3 The 1988 amendment's application to this case is prospective. Its application does not attach new legal consequences to payments setoff before the insolvency. It only affects claims and credits that became due after its enactment, and it is not being applied to transactions which were completed before its effective date. The application of the 1988 amendment was not triggered by the execution of the contract. Only events after the effective date of the amendments triggered section 1928(B)'s application: the liquidation order, the appointment of the receiver, and Guardian's attempt to setoff liabilities. All of these events occurred after the amendment's effective date. When a law is applied only to payments after the date of its enactment, the application is prospective. *In re Foxcroft*, 198 B.R. 99, 105 (Bankr. E.D.Pa.1996); *In re Upton Printing* 197 B.R. 616, 620 (Bankr.E.D.La.1996).

¶ 4 Priorities in insolvency proceedings are generally determined by the law in effect at the time the proceedings are filed. *See Oklahoma Life & Health·Ins. Guar. Ass'n v. Hilti Retirement Savings Plan*, 1997 OK 25, 939 P.2d 1110. In *Hilti*, the parties entered into guaranteed investment contracts (GICs) in 1987 and 1988. Thereafter, the Oklahoma Legislature amended the Oklahoma Life and Health Insurance Guaranty Act, Okla. Stat. tit. 36, §§ 2021–43 (Supp.1987 & 1991), to exclude GICs from its coverage. Thereafter the company holding the contracts became insolvent. Determining that the operative event was the insolvency, this Court applied the amended version of the Act to the GICs because it was in effect at the time the insolvency was filed. Likewise, in the present case, the operative event is the filing of the liquidation proceedings. Under *Hilti*, the law in effect at the time the liquidation proceeding was filed is the controlling authority.

¶ 5 Application of the 1988 amendment does not improperly impair Guardian's contract rights. "[C]ontractual terms are not sacrosanct when an insurance company is insolvent." *Grode v. Mut. Fire. Marine and Inland Ins. Co.*, 132 Pa.Cmwlth. 196, 572 A.2d 798, 804 (1990) *modified Foster v. Mut. Fire, Marine and Inland Ins. Co.*, 531 Pa. 598, 614 A.2d 1086 (1992) (upholding analysis of Contract Clause); John E. Tiller, Jr. & Denise Fagerberg, *Life, Health & Annuity Reinsurance* 266 (1990); Stephen W. Schwab et al. *Onset of An Offset Revolution: The Application of Set–Offs in Insurance Insolvencies*, 95 Dick. L.R. 449, 466 (1991). Contract provisions cannot override a statutory prohibition against setoff, John E. Tiller, Jr. & Denise Fagerberg, *Life, Health & Annuity Reinsurance* 266 (1990); *see Magnusson v. American Allied Ins. Co.*, 290 Minn. 465, 189 N.W.2d 28 (1971), and an agreement governing the right to setoff is not effective after liquidation proceedings are filed. Stephen W. Schwab et al. *Onset of An Offset Revolution: The Application of Set–Offs in Insurance Insolvencies*, 95 Dick. L.R. 449, 466 (1991). Congress has the power to change priorities in bankruptcy proceedings and apply the change to pending cases. *Coin Machine Acceptance Corp. v. O'Donnell*, 192 F.2d 773, 777–78 (4th Cir.1951); *In re Advisory Opinion to the Governor*, 593 A.2d 943 (R.I.1991). States have no less power to change priorities in insurance liquidation proceedings and apply those changes in liquidation proceedings filed after the change's effective date. *See Aetna Life Ins. Co. v. Washington Life and Disability Ins. Guar. Ass'n*, 83 Wash.2d 523, 520 P.2d 162 (1974).

¶ 6 A law impairing a contract is not necessarily unconstitutional. *General Motors Corp. v. Romein*, 503 U.S. 181, 186, 112 S.Ct. 1105, 1109, 117 L.Ed.2d 328 (1992); *Keystone Bituminous Coal*, 480 U.S. at 503–04, 107 S.Ct. at 1251–52; *Taylor v. State and Education Emp. Group Ins. Program*, 1995 OK 51, ¶ 14, 897 P.2d 275, 279. In analyzing whether a statute violates the Contract Clause, the inquiry begins with a three part test: "whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *General Motors Corp.*, 503 U.S. at 186, 112 S.Ct. at 1109; *Taylor*, 1995 OK 51 at ¶ 14, 897 P.2d at 279. I agree that Guardian and ASL had a contractual relationship. However, the overriding event that frustrated the contract was ASL's insolvency not the amendment to section 1988. Guardian could not by contract override the state's right to determine priorities and then argue that the state's exercise

of its authority impaired its contract, especially in light of section 1925 of title 36 which states that the rights of the creditors are determined at the time the liquidation order is filed.

¶ 7 The Court without analysis or authority states that in 1997 the Legislature clarified the 1988 amendment—the amendment that the Court says does not apply to this case. This Court has long held: "The legislature has no power to direct the judiciary in the interpretation of existing statutes. The legislative intent that controls in the construction of a statute has reference to the legislature which enacted the act," not a subsequent legislature. *Stephens Produce Co. v. Stephens,* 1958 OK 277, 332 P.2d 674, 677. *See City of Bristow v. Groom,* 1944 OK ——, 194 Okla. 384, 151 P.2d 936, 942; *Kuykendall v. Dept. of Public Safety,,* 1975 OK 175, ¶ 9, 544 P.2d 516, 518. Subsequent amendments are not indications of the intention of the adopting legislature in enacting earlier statutes. *Kuykendall,* 1975 OK 175, at ¶ 9, 544 P.2d at 518. Only when a statute is subject to serious doubt and there has been no judicial interpretation is subsequent amendment used to clarify a prior statute. *Quail Creek Golf and Country Club v. Oklahoma Tax Comm'n,* 1996 OK 35, ¶ 10, 913 P.2d 302, 303. Where a statute is not subject to serious doubt as in this case, an amendment will be presumed to alter the law. *Special Indemnity Fund v. Archer,* 1993 OK 14, 847 P.2d 791, 795.

¶ 8 Because the application of the 1988 amendment of section 1928(B) to Guardian's right to setoff was not retrospective and did not impermissibly impair Guardian's contract rights and the 1997 amendment is not a statement of the 1988 legislative intent, I dissent from the Court's opinion and would affirm the trial court.

1. The pertinent terms of 36 O.S.1991 § 1928 are:

"A. In all cases of mutual debts or mutual credits between the insurer and another person in connection with any action or proceeding under this article, such credits and debts shall be set off and the balance only shall be allowed or paid, except as provided in subsection B of this section.

OPALA, J., with whom HODGES and WILSON, JJ., join, dissenting.

¶ 1 Today's pronouncement declares that the trial court erred in allowing the terms of 36 O.S.1991 § 1928 B.4 [1] to serve as the basis for depriving the reinsurer, The Guardian Life Insurance Company of America (Guardian), of its contractual-offset bargain because a) the invoked statutory provisions were *not in force* when the reinsurance contract was made and b) their interposition would impermissibly impair the obligation of Guardian's reinsurance contract. I cannot accede to the court's view that the nisi prius judgment *must be reversed* because the statutory provision in § 1928 B.4, by which certain offsets could have been disallowed, is *after-enacted* law that *may not be applied* to this case. In the process of administering a statutory regime applicable to insolvent insurers, the state's regulatory power over the insurance industry most certainly includes equity-anchored authority to modify contracts. Moreover, because *pre-existing* chancery practice amply supports the nisi prius rejection of the claimed offsets upon grounds long cognizable by equity jurisprudence, and because the findings on which that rejection is rested are not clearly contrary to the weight of the evidence, I would affirm the trial court's judgment.

¶ 2 Although I join the views expressed by the other dissent in the case, I also write separately to unveil my own analysis of the flaws in today's pronouncement.

I

THE ANATOMY OF LITIGATION

¶ 3 Guardian agreed, on or about January 27, 1986, to reinsure a block of life insurance contracts of which a Pennsylvania company was primary insurer. That primary insurer later sold these contracts, effective December 31, 1986, to American Standard Life and

B. No offset shall be allowed in favor of any such person where:

&ast; &ast; &ast;

4. the obligation of the insurer to such person was the result of a life or accident and health reinsurance agreement that contains terms or conditions structured to avoid reasonable risk transfer and indemnification criteria...."

Accident Insurance Company (American). American's year-end financial statements—beginning in 1985—reflected large losses, and by June 1987 the company was considered "exceedingly risky". Either on June 5 or 18, 1987 Guardian amended its reinsurance agreement with the Pennsylvania company by *consenting* to the latter company's contract assignment to American. *American—declared insolvent on February 22, 1991—was placed in receivership with the State Insurance Commissioner (Receiver).*

¶ 4 The reinsurance agreement in contest allowed Guardian to collect insurance premiums paid by policyholders to American and then to offset these payments against claims made on the policies, so that Guardian would owe American only the net amount. Receiver sued Guardian on July 1, 1992 for declaratory relief from Guardian's premium-offset demands. The nisi prius court acceded to its plea, giving two reasons for a favorable ruling: 1) the provisions of 36 O.S.1991 § 1928 B.4, effective from November 1, 1988, which were in force when Receiver was appointed, prohibit "lending or renting of surplus" which "masked" from the regulators American's true financial condition; and 2) when Guardian consented in June 1987 to American's substitution as primary insurer, it *knew or should have known* that American was insolvent.

¶ 5 Guardian appealed. After the Court of Civil Appeals' decision that favored Receiver, this court granted certiorari to review the tendered issues.

## II

PRE–EXISTING EQUITABLE PRINCIPLES, DRAWN FROM CHANCERY PRACTICE, AMPLY SUPPORT THE TRIAL COURT'S FINDINGS ON WHICH DISALLOWANCE OF OFFSET DEMANDS ARE RESTED; INSOLVENCY JURISPRUDENCE FIRMLY SUPPORTS THE ·NOTION THAT THE AFTER–ENACTED PROVISIONS OF 36 O.S.1991 § 1928 B.4 ARE NO BARRIER TO INVOCATION OF COMMON–LAW RULES

### A.

¶ 6 Insolvency law is a branch of equity jurisprudence.[2] When insolvent, insurers are subject to state-court liquidation proceedings, which are controlled by rules that govern receiverships in chancery. There, unwritten law is followed *unless* found contrary to some specific statutory enactment.[3]

¶ 7 The *pre-existing non-statutory* body of law, known as equity jurisprudence, supports the nisi prius court's disallowance of offset credit to Guardian because of the latter's consent to the assignment when it knew that American was insolvent. Under time-honored chancery practice, an offset against an insolvent may be refused once the proof is clear that when the contract was made the offset claimant had knowledge of the primary insurer's insolvency.[4] *The nisi prius court found that at a very critical time (either close to or before the reinsurance transaction) Guardian knew* (or should have known) *the company it was to reinsure was insolvent.* This finding provides a tenable ground in equity for rejecting the offset plea.[5]

2. *Cumberland Glass Mfg. Co. v. De Witt*, 237 U.S. 447, 453, 35 S.Ct. 636, 638, 59 L.Ed. 1042, 1045 (1915); *In re Rosenbaum Grain Corp.*, 103 F.2d 656, 658 (7th Cir.1939); *Givens v. Hall*, 18 Wash. App. 618, 569 P.2d 1232, 1234 (1977); 4 W. Collier, Bankruptcy § 68.02 at 851–52 (14th ed. J. Moore 1975); 1 Remington, Bankruptcy Law, § 22 at 44–50 (5th ed. James M. Henderson 1950).

3. The pertinent terms of 12 O.S.1991 § 2 are:

"The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma ..."

*See also Greenberg v. Wolfberg*, 1994 OK 147, 890 P.2d 895, 899; *In the Matter of the Estate of Maheras*, 1995 OK 40, 897 P.2d 268, 273; *Wright*

*v. Grove Sun Newspaper Co.*, 1994 OK 37, 873 P.2d 983, 987; *Tate v. Browning–Ferris*, 1992 OK 72, 833 P.2d 1218, 1224–25.

4. *United States v. Columbia Erection Corporation*, 134 F.Supp. 305, 306 (W.D.Mo., 1955); 3 Remington, Bankruptcy Law, § 1471 at 443–447 (5th ed. James M. Henderson 1950); 4 Remington, Bankruptcy Law, § 1710.8 at 354–358 (5th ed. James M. Henderson 1950).

5. The critical finding in the trial court's July 18, 1994 journal entry, which supports this ruling is: "Guardian *knew or should have known on or before June 18, 1987, that ASL [American] was insolvent* and they possessed the right to refuse to enter into the amendment to the Coinsurance Agreement with ASL [American]." (Emphasis supplied.)

¶ 8   Application of the pertinent chancery jurisprudence is *not* dependent upon one's statutory right of set-off; it may be allowed *independently* of statute.[6]   The trial court did not rest its refusal to allow offsets *solely* on the after-enacted statute.   Its disallowance clearly came to be rested upon Guardian's *scienter* with respect to a critical fact.[7]

¶ 9   The critical nisi prius ruling is not contrary to law, nor does it impair the reinsurer's right to offsets under its contract. The trial court's finding of Guardian's "guilty knowledge" (of American's insolvency) at the time Guardian consented to have American reinsured is a sufficient ground in equity to support its rejection of Guardian's demand for offsets.   Because this dispositive rule of law, drawn from a non-statutory source, was in force long *before* the enactment of § 1928 B.4, its application to this case does not offend the constitutional prohibition against applying *an after-enacted statute* to affect the obligation derived from *a pre-existing promise.*

### B.

¶ 10   The trial court's *other ruling* that Guardian "lent or rented surplus" to American, which "masked" from the regulators American's declining financial condition is not a determination *solely rested* upon the after-enacted provisions of 36 O.S.1991 § 1928.   The equitable principle invocable as a basis for that ruling antedates the cited statute's enactment.

¶ 11   The critical amendment, which added the language in 36 O.S.1991 § 1928 B.4—whose application to this case the court condemns today—prohibits that manner of structuring a reinsurance agreement which would avoid "reasonable risk transfer" to a primary insurer.[8]   More simply put, a reinsurer cannot lend its credit (surplus) but must extend *genuine* financial indemnity to the primary insurer in order to provide economic security to the company and its policyholders.   The nisi prius tribunal's ruling determined Guardian had entered into an *illusory transfer* which allowed American to borrow Guardian's credit and to conceal American's insolvency from the knowledge of its insurance regulators.   In short, Guardian's reinsurance scheme was found to have been but an illusory assumption of indemnity and in effect a "paper" security that may create the appearance of value but in reality is no more than a sham transaction.   Reality, not appearance, is the test which determines Guardian's claim to set-off rights in this case.[9]

¶ 12   Nisi prius application of the illusory-transfer doctrine, long followed in equity,[10] neither implicates here the *after-enacted* statute nor impairs Guardian's contractual rights.   Just as a federal bankruptcy court can *pierce* through the form *to test the sub-*

---

6.   *See Siegel v. State*, 262 A.D. 388, 390, 28 N.Y.S.2d 958, 961 (1941), where it is stated: "The right to assert set-off at law is of statutory creation;  it was not recognized at common law. Courts of equity however supplied what the common law omitted and long prior to the statute of set-offs it had been a familiar and favorite principle of courts of chancery to adjust in one suit all conflicting demands between the parties, which were readily capable of such adjustment, where, from the relations and situation of the parties and from the nature of their mutual claims, equity and justice seemed to require a complete and speedy settlement. *Consequently the jurisdiction of equity is not based upon any statutes of set-off, and would exist as well without any such statutes as it now does, and would not in any sense be affected by their repeal.*   By the exercise of this equitable jurisdiction the courts are enabled to do justice between the parties in cases not strictly within the provisions of the statute." (Emphasis added.)
*See also Cumberland Glass, supra,* note 2; *In re Rosenbaum Grain Corporation, supra,* note 2.

7.   In civil law the element of "prior knowledge" is not always tantamount to willfulness of conduct.   Willfulness stems from "guilty knowledge" which is synonymous with "culpable knowledge" or *"scienter"*.   *See Dayton Hudson Corporation v. American Mutual Liability Insurance Company,* 1980 OK 193, 621 P.2d 1155, 1161; *In re Initiative Petition 272, State Question 409,* 1963 OK 285, 388 P.2d 290, 293.   *Scienter,* or guilty knowledge, may be shown either by circumstantial evidence or by direct and actual proof. *See Hanf v. State,* 1977 OK CR 41, 560 P.2d 207, 210.

8.   For the amended provision, see supra note 1.

9.   *Roberts v. South Oklahoma City Hospital Trust,* 1986 OK 52, 742 P.2d 1077, 1082 (Opala, J., concurring); *Newman v. Dore,* 275 N.Y. .371, 9 N.E.2d 966, 968 (1937).

10.   *See Newman, supra* note 9.

*stance* of *any* transaction under its examination and then reform the affected instruments to meet legal reality,[11] so too may a state court sitting in chancery similarly deny Guardian's offset claim that is sought to be anchored upon an illusory transfer.

¶ 13 I would *neither* disturb the trial court's findings *nor* its conclusion. The judgment rests on clearly supportive proof, is consistent with time-honored equity jurisprudence, and does not impair Guardian's constitutionally-protected contractual rights.

### III

THE INCIDENTS OF OKLAHOMA INSOLVENCY LAW MAKE ALL INSOLVENT INSURERS (SUBJECT TO THIS STATE'S JURISDICTION) AMENABLE TO MODIFICATION OF THEIR CONTRACTUAL OBLIGATIONS

¶ 14 Governmental authority to regulate the insurance business as an enterprise affected with public interest lies within the state's recognized police power.[12] Insurance companies do business under supervisory control of the State Insurance Commissioner.[13] That official's power is exercised for the benefit of the policyholders and of the public.[14] Reasonable state regulations are not deemed violative of the constitution as an impermissible deprivation of property which offends due process of law.[15] When declared insolvent, insurers chartered by this state become subject to a legal regime interposed to regulate their *special rights and liabilities* applicable to entities which cannot meet obligations as they become due. The terms of insolvency law are to be viewed as the rules of conduct with respect to which *all* insurers must contract on a daily basis.

¶ 15 In federal bankruptcy matters, the Bankruptcy Act takes precedence over other laws and, in case of conflict, controls over competing statutory preferences.[16] Because attempts to place the insurance industry under congressional control as an activity in interstate commerce failed to take hold, the states continue to have plenary power to regulate this business in the public interest.[17]

¶ 16 The focus of state concern is *insurer misconduct.*[18] Both supervision and conservatorship of the industry are matters of public policy. They are necessary to the public welfare and have been declared a condition of doing insurance business in this state.[19] In the process that immediately precedes the declaration of an insurer's insolvency (called a delinquency proceeding) it is the court's duty to appoint as receiver the insurance commissioner,[20] who, by force of law, becomes vested with title to property, contracts, and all rights of action formerly controlled by the insurer.[21] The state's power

11. 1 Remington, Bankruptcy Law, § 22 at 47–58 (5th ed. James M. Henderson 1950).

12. *Insurance Company of North America v. Welch*, 49 Okl. 620, 154 P. 48, 49 (1915).

13. 36 O.S.1991 § 307 *et seq.;* § 1803 *et seq.*

14. *Oklahoma Benefit Life Association v. Bird*, 192 Okl. 288, 135 P.2d 994, 997 (1943).

15. *Insurance Company of North America v. Welch, supra,* note 12, at 50.

16. *In the Matter of Jonker Corporation*, 385 F.Supp. 327, 331 (D.Md.1974).

17. *United States Department of the Treasury v. Fabe*, 508 U.S. 491, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993).

18. Article 18 of Title 36 of the Oklahoma Statutes, which addresses supervision and conservatorship of insurers, includes the provisions of 36 O.S.1991 § 1801(A)(8). These are:
"It is a proper concern of this State to attempt to correct or remedy insurer misconduct, ineptness or misfortune."

19. The terms of 36 O.S.1991 § 1801(C) are:
"The substance and procedure of this act is, therefore, declared to be the public policy of this state and necessary to the public welfare. *Such policy and welfare require the availability of the remedies provided by this law whenever circumstances warrant, and it is a condition of doing an insurance business in this state.*"

20. The terms of 36 O.S.1991 § 1914(A) are:
"Whenever under this article a receiver is to be appointed in delinquency proceedings for a domestic or alien insurer, the court shall appoint the Insurance Commissioner as such receiver. The court shall order the Insurance Commissioner forthwith to take possession of the assets of the insurer and to administer the same under the orders of the court."

21. The terms of 36 O.S.1991 § 1914(B) are:
"As domiciliary receiver, the Insurance Commissioner shall be vested by operation of law with the title to all of the property, contracts, and rights of action and all of the books and records of the insurer, wherever located, as of the date of entry of the order directing him to

that is set in motion at this point consists of not only the authority to *regulate* but also to *rehabilitate, liquidate, sell assets,* and bring about restructuring of the insolvent company.[22]

¶ 17 Insurance companies are creatures of the law and must act in conformance with its provisions. All insolvent insurers doing business in this state are subject to those contract modifications which govern them in equity as well as by statute. In short, the state has the power to say what contracts are enforceable against insolvents as well as in what manner and in what forum they may be performed.[23]

¶ 18 State government's police power to regulate the insurance industry is part of the existing law in every insurance contract that is executed. That power, in contemplation of law, is a part of every such contract.[24] Once the insurance commissioner's control over an insolvent risk carrier stands conferred, the insurer's contractual obligations are subjected to strict scrutiny imposed by both equity jurisprudence as well as the statutes.

¶ 19 The rule against impairing contracts by after-enacted legislation *does not protect*

those who deal with a department of government that is given the power to safeguard public welfare.[25] There is a *legal presumption* that when contracts are entered into by a highly-regulated enterprise, such as the insurance industry, the parties cannot by private agreement withdraw their undertaking from the police power of the state.[26] Were it not for this rule the state's regulatory authority would, in every instance, be defeated by the contracting companies' will.[27]

¶ 20 Where police power is exercised for a public purpose, insolvents' contracts must yield to the accomplishments of that end.[28] Rehabilitation of insurance companies under state insolvency statutes does not impair contractual obligations.[29] Upon the occurrence of an insurer's insolvency, contracts are subject to reassessment in light of the applicable equity rules that govern in administering the insolvent insurer's assets. The provisions of 36 O.S.1991 § 1928 B.4, which in some circumstances pose a barrier to offsets, are to be viewed as no more than a *supplement* to the governing equity jurisprudence. Their terms include pre-existing principles of the state's regulatory scheme applicable in insol-

rehabilitate or liquidate a domestic insurer or to liquidate the United States branch of an alien insurer domiciled in this state, and he shall have the right to recover the same and reduce the same to possession; except that ancillary receivers in reciprocal states shall have, as to assets located in their respective states, the rights and powers which are herein prescribed for ancillary receivers appointed in this state as to assets located in this state."

22. The provisions of 36 O.S.1991 § 1914(E) are: "Upon taking possession of the assets of an insurer, the domiciliary receiver shall, subject to the direction of the court, immediately proceed to conduct the business of the insurer or take such steps as are authorized by this article for the purpose of rehabilitating, liquidating, or conserving the affairs or assets of the insurer."

23. *Metropolitan Life Insurance Company v. Lillard,* 118 Okl. 196, 248 P. 841, 845 (1926).

24. *Sunray DX Oil Company v. Cole,* 1967 OK 242, 461 P.2d 305, 308–309; *Landowners, Oil and Gas Royalty Owners v. Oklahoma Corporation Commission,* 1966 OK 225, 420 P.2d 542, 544.

25. *Southeastern Oklahoma Development and Gas Authority v. Oklahoma Corporation Commission,* 1980 OK 16, 606 P.2d 574, 575, *citing Home*

*Building & Loan Association v. Blaisdell,* 290 U.S. 398, 434, 54 S.Ct. 231, 238, 78 L.Ed. 413 (1934):

"Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order. The policy of protecting contracts against impairment presupposes the maintenance of a government by which contractual relations are worthwhile, a government which retains adequate authority to secure the peace and good order of society."

26. *See Southeastern Oklahoma Development and Gas Authority v. Oklahoma Corporation Commission, supra,* note 25, at 576.

27. *See Southeastern Oklahoma Development and Gas Authority v. Oklahoma Corporation Commission, supra,* note 25, at 576.

28. *Veix v. Sixth Ward,* 310 U.S. 32, 39, 60 S.Ct. 792, 795, 84 L.Ed. 1061 (1940).

29. *Neblett v. Carpenter,* 305 U.S. 297, 302, 59 S.Ct. 170, 172, 83 L.Ed. 182 (1938); *Mendel v. Garner,* 283 Ark. 473, 678 S.W.2d 759, 761 (1984).

vency proceedings. That scheme allows modification of contractual terms when that becomes necessary to uphold public policy.[30]

¶ 21 *All insurers declared insolvent* stand subject to the state's power to modify their contractual obligations. To meet the legitimate objective of liquidation, rehabilitation or sale, the exercise of that power is well-nigh critical, if not indeed indispensable.[31]

### SUMMARY

¶ 22 All demands pressed in receivership proceedings against insolvent insurers are governed by statute and by equity jurisprudence. Long before statutory rights of set-off were ever fashioned, courts of equity applied their own principles to that concept.[32] A judicial presumption favors legislative preservation of common-law rights.[33] Where the common law gives a remedy, and another is added by statute, the latter is to be treated as merely cumulative, unless it was explicitly declared to be exclusive.[34] When new legislation affecting insolvent insurers merely codifies the common law, pre-existing contractual rights are not impermissibly impaired.[35]

¶ 23 It is of *no moment* in this case that the contested provisions of § 1928 B.4 might be treated as an *after-enacted statute* whose terms, generally speaking, cannot be applied to the declaratory relief sought in this case.

Four reasons militate in favor of this view: 1) the trial court found that the offset claim is tainted by Guardian's knowledge of the reinsured entity's insolvency; 2) the court also found the reinsurance transaction to be illusory; 3) none of these findings is clearly contrary to the weight of the evidence in the record; and 4) the chancellor's refusal to allow the offset claim is rested on firmly-settled principles of *pre-* § 1928 B.4 equity jurisprudence.

¶ 24 While in an equity case an appellate court *will* examine and weigh the record proof, it must abide by the law's presumption that the trial court's decision is legally correct.[36] A nisi prius decree cannot be disturbed unless found to be *clearly contrary to the weight of the evidence* or to some governing principle of equity jurisprudence.[37] Although the trial court did not explicitly refer to all the governing equitable principles, its findings are impervious to reversal if the result reached was correct even though the pertinent rule of law was not assigned as a ground for the conclusion reached.[38] If legally correct, the chancellor's decree will not be reversed because of faulty reasoning, an erroneous finding of fact or the consideration of some immaterial issue.[39]

¶ 25 Because I cannot countenance today's implicit assumption that there was *no*

**30.** *Bluewater Insurance Limited (by Tennessee Insurance Company) v. Balzano,* 823 P.2d 1365, 1372 (Colo.1992).

**31.** *Southeastern Oklahoma Development and Gas Authority v. Oklahoma Corporation Commission, supra,* note 25, at 576.

**32.** *McCormack v. Oklahoma Publishing Company,* 1980 OK 98, 613 P.2d 737, 740; *Hogan v. State of Nevada,* 84 Nev. 372, 441 P.2d 620 (1968); *Siegel v. State, supra,* note 6.

**33.** *Greenberg v. Wolfberg, supra,* note 3 at 899; *Tate v. Browning–Ferris, supra,* note 3 at 1225; *State Mut. Life Assur. Co. of Amer. v. Hampton,* 1985 OK 19, 696 P.2d 1027, 1036 (Opala, J., concurring); *Reaves v. Reaves,* 15 Okl. 240, 82 P. 490, 495 (1905).

**34.** *Greenberg v. Wolfberg, supra,* note 3 at 899; *Wright v. Grove Sun Newspaper Company, Inc., supra,* note 3 at 987; *Tate v. Browning–Ferris, supra,* note 3 at 1225.

**35.** *See Southeastern Oklahoma Development and Gas Authority v. Oklahoma Corporation Commis-*

*sion, supra* note 25 at 575; *Sunray DX Oil Company v. Cole, supra,* note 24 at 308–309; *Landowners, Oil and Gas Royalty Owners v. Oklahoma Corporation Commission, supra* note 24, at 544.

**36.** *Boatright v. Perkins,* 1995 OK 34, 894 P.2d 1091, 1094.

**37.** *Boatright v. Perkins, supra* note 36, at 1094; *Adams v. Adams,* 208 Okl. 378, 256 P.2d 458, 462 (1953); *Childers v. Breese,* 202 Okl. 377, 213 P.2d 565, 568 (1950); *Courts v. Aldridge,* 190 Okl. 29, 120 P.2d 362, 364 (1941).

**38.** *In the Matter of the Estate of Bartlett,* 1984 OK 9, 680 P.2d 369, 373.

**39.** *Boatright v. Perkins, supra* note 36 at 1094; *Willis v. Nowata Land and Cattle Co.,* 1989 OK 169, 789 P.2d 1282, 1286–87; *In the Matter of the Estate of Bartlett, supra* note 38 at 373; *Carpenter v. Carpenter,* 1982 OK 38, 645 P.2d 476, 480; *Moree v. Moree,* 1962 OK 95, 371 P.2d 719, 720.

*antecedent* norm of Oklahoma's common law to support the trial judge's rejection of the offset, I recede from this court's pronouncement as well as from its disposition.[40]

---

**40.** Because, in my view, the 1988 amendment of § 1928 *did not change* the teachings of equity jurisprudence then in force, the later addition of Subsection C in 1997 has no effect on this litigation. Subsection C declared the legislative intent of the 1988 amendment to stand confined to reinsurance agreements entered into after November 1, 1988. *See* Okl.Sess.L.1997, Ch. 156, § 3, p. 930. My analysis would relegate Subsection C to the irrelevant status of after-enacted legislation.